## TURNER and Others *v.* COOK.

DEMURRER.—*Verification of Complaint.*—A demurrer assigning for cause that a complaint does not state facts sufficient to constitute a cause of action, does not raise any question as to the verification of the complaint.

SAME.—*Defect of Parties.*—A demurrer assigning for cause that the complaint does not state facts sufficient to constitute a cause of action does not present the question of defect of parties.

PRACTICE.—*Verification of Pleadings by Infants.*—The statute requiring the verification of pleadings does not apply to infants. A verification by the next friend is sufficient.

WILL.— *Evidence.*— *Opinion of Witness as to Testamentary Capacity.*—The naked opinion of a witness, not an expert, as to a testator's soundness of mind is not competent evidence.

EVIDENCE.—*Declarations of Deceased Husband.*—The widow of a testator can-not give in evidence communications made to her by her husband during mar-riage.

WILL.—*Execution of.*—It is not necessary that the testator should, at the time of executing the will, inform the subscribing witnesses that the instrument which they are to sign is a will.

SAME.—*Subscribing Witnesses.*—The testator need not see the witnesses subscribe their names to the will; it is sufficient if the instrument is subscribed in his presence. The witnesses must know that the paper which they have subscribed is the one which the testator signed.

SAME.—*Undue Influence.*—The fact that a will made ten years prior to one be-ing contested was procured by undue influence, should not be submitted to the jury as a circumstance against the will in controversy.

PRACTICE.—*Proceeding to Contest a Will.—Burden of Proof.*—In a proceeding to contest a will which has been admitted to probate, the burden of proof is on the plaintiff.

APPEAL from the Vermillion Common Pleas.

DOWNEY, C. J.—This was a suit brought by the appellee, Cook, one of the heirs of George A. Turner, deceased, against the appellants, the widow, heirs, and devisees of said deceased, to contest the will of the deceased. The com-plaint is not verified by Cook, but is verified by the next friend.

The grounds alleged for setting aside the will are the un-soundness of mind of the testator and the undue execution

Turner and Others *v.* Cook.

of the will. It does not appear whether the executrix, who was the widow, named in the will, had qualified or not.

Two of the defendants, Elizabeth Turner, the widow, and Robert A. Turner, a son of the deceased, demurred to the complaint, for the reason that it did not state facts sufficient to constitute a cause of action. This demurrer was over-ruled, and the point reserved by entering the proper exception.

They then answered by admitting (what was not charged) the execution of the will, and that it was proved and admitted to record by the verdict of a jury and judgment of the court, a copy of which judgment was filed with the answer, but denying each and every other allegation of the complaint. The other defendants made default.

There was a reply filed to the answer, prompted, we presume, by the liberality of the defendants in making admissions in their answer.

A trial by jury resulted in a general verdict that the will in controversy was not the will of the deceased, and not valid; also the following answers to interrogatories, to wit:

1.  "Did the testator make his mark to the will in controversy?"  "Yes."

2.  "Did any two of the subscribing witnesses to the will see the testator sign the same?"  "No."

3.  "Did the testator, after the signing of the will, declare, in the presence and hearing of the subscribing witnesses, that the instrument was his will?"  "No."

4.  "Had the testator, at the date of the signing of the will, a sound, disposing mind and memory?"  "No."

5.  "Were the witnesses to the will so situated that they could see the testator make his mark at the time he did so, if they had chosen so to do?"  "Yes."

There was a motion for a new trial, for the following reasons:

1.  The verdict and findings of the jury are not sustained by sufficient evidence.

2. The verdict and findings of the jury are contrary to the evidence and the law.

3. Error by the court in refusing to allow the defendant Elizabeth Turner, wife of the testator, to testify as to the soundness of his mind; to declarations made by him to other persons; and to directions given to her by him with reference to the execution of the will, on the day before and on the same day on which the will was executed.

4, 5, and 6. Giving and refusing instructions alleged to have been improperly given and refused.

This motion was overruled, and judgment rendered setting aside the probate of the will and declaring it invalid, and for costs.

The first and second assignments of error cover all the points in the case. They are: 1. The overruling of the demurrer to the complaint. 2. The refusal to grant a new trial.

Two objections to the complaint are urged. 1. That the complaint should have been verified by Cook, and not by the next friend. 2. That the executrix should have been made a party defendant, or the complaint should have alleged that there was no executor.

The first objection is not raised by a demurrer to the complaint alleging that it does not state facts sufficient. *Denny, Adm'r,* v. *Moore,* 13 Ind. 418. But it cannot be admitted that an infant plaintiff, suing by a next friend, must personally verify his complaint. He may be too young to take an oath. The section of the statute requiring the complainant to verify his complaint by his affidavit must be construed to apply to adults and not to infants. The verification in this case, by the next friend, was sufficient.

The second objection to the complaint is, that there is a defect of parties defendants; that the executrix is not made a party. This objection is probably without much point, as the widow is named in the will as the executrix, and she is a party defendant, though it does not appear whether she ever qualified or not. The demurrer to the complaint was

not, however, for defect of parties, but was for the reason that the complaint did not state facts sufficient to constitute a good cause of action. The demurrer did not present the question as to defect of parties. *Collins* v. *Nave, 9* Ind. 209; *Little* v. *Johnson,* 26 Ind. 170.

Several questions are presented arising out of the motion for a new trial. Elizabeth Turner, the widow and one of the defendants, being on the stand as a witness, the defendants proposed to prove by her that at the time the testator made the will in controversy he was of sound mind; also the declarations which she heard the testator make to others, and especially to the subscribing witnesses, in her presence and hearing; and the conversations between him and the subscribing witnesses during the evening the will was made, and between the testator and other persons on the day before the will was made; also the declarations of the testator made to her in giving directions to her the day the will was made and the day before the will was made, in reference to the execution of the will in controversy. Which evidence was excluded by the court, and the point reserved by exception.

This offer was not definite enough to warrant us in saying that the court erred in refusing her testimony. If it was proposed to have her express a naked opinion as to his soundness of mind, then the evidence was not admissible; so if it was proposed to have her narrate communications from him to her and base her opinion upon them as to his sanity. And unless we knew what declarations and conversations of his to and with other persons it was proposed to have her state, and that they related in some way to the questions in issue, we could not say that any error was committed in not allowing her to testify. As to his communications or declarations to her, they were clearly inadmissible. 3 Ind. Stat. 560, sec. 2.

We have examined the instructions given, and those asked and refused, and are of the opinion that the common pleas

misconceived the law in several respects in charging the jury.

The evidence shows that in 1857 the testator made a former will. Subsequently, and probably in 1859, he had had another will written, but it had not been signed. At the date of the will in question, Elizabeth Turner, the wife of the deceased, went to the person who wrote the last will, stating to him that she came by the direction of her husband to get him to go and see the blank will executed. She produced to him the first will, as well as the one unsigned, and after reading them, he suggested that a new one should be written, for the reason, as he says, that the unsigned will spoke of a filly, which he thought would not be a filly then, on account of the lapse of time. Accordingly, he wrote the will in question and gave it to Mrs. Turner, giving particular directions to a Mrs. Mayer, who accompanied Mrs. Turner, as to the execution of it. These several wills seem to have been copied, substantially, one from the other. The will in question, following the others in this respect, gave to Anna Caroline, a daughter of the deceased, an interest in the personal property in remainder after the death of the widow, if any should be left unconsumed by the widow. Anna Caroline had died after the writing of the unsigned will, but before the making of the will in question.

With reference to this feature of the case, the court instructed the jury, among other things, as follows:

"Extreme old age raises some doubt of capacity, but only so far as to excite the vigilance of the court. But if a man in his old age becomes a very child again, and does not know the difference between the wants of his dead and living children in reference to property, but makes provision in his will for both the dead and living children, he is no more capable of making a will than a natural fool, a child, or a lunatic."

There was no circumstance disclosed in the evidence to which this instruction could relate, except that of the mention of the name of Anna Caroline, as above, in the will in question. We think that fact with the attending circum-

stances did not justify the giving of this charge.   We think the court gave to it too much prominence and conclusiveness. Its force and effect as evidence should have been left to the jury in connection with the other facts.

Nicholas Mayer, Martha Mayer, and James McLaughlin were the subscribing witnesses to the last will.   Mrs. Mayer, who seems to have been most attentive, narrates the facts with reference to the execution of the will as follows:  "I reside near Indianapolis, Indiana.   Three years ago I resided with my husband near George A. Turner's, on his land in Vermillion county, Indiana.   I knew him for nine months before his death.   Saw him frequently, almost daily.   We carried water from his house.   I have often conversed with him.   I was at his house the day and evening the will was made.   I was invited to go there at that time.   I went with my husband, Nicholas Mayer.   That day and evening I talked with the old man and with the family.   The old lady brought me the will.   Mr. Turner told her to hurry.   He said: 'Elizabeth, hurry; tend to this business first, we can talk afterwards.'   Mrs. Turner and I got the will immediately from the next room, and came into the sick room where Mr. Turner was.   I sat down and read the will over to myself first, so that I could read it better to Mr. Turner.   I then sat on Mr. Turner's bed and read the will and attesting clause to him.   Robert held the light, I think.   As I read the will to him, I asked him if he heard me.   He said he understood it very well.   When I was done reading, I asked him if he understood it.   He replied, 'I understand it correctly, and am very well satisfied.'   The old man then said, 'I cannot write; you must write my name for me.'   I wrote his name, and then got a book, an atlas, I think ; we propped him up in bed.   I then gave him the pen, and he made his mark.   I did not hold or guide the pen for him. As soon as the will was read, I signed my name and my husband's as witnesses at the table, and then went to the bed, and the old man made his mark to the will, and I signed his name afterwards.   I don't recollect whether we signed our

names before he did his or not; but am rather of the opinion he signed first. I am pretty certain that he did. I wrote my name and my husband's next. I wrote my husband's name at his request. He can write in German, but not in English. Then McLaughlin told John Mangus to write his name, which Mangus did, and McLaughlin then made his mark. The witnesses signed in nearly the opposite corner of the room from Mr. Turner, on a table. There was nothing between them and Mr. Turner to prevent them seeing him make his mark or to prevent him seeing them sign the will. My husband and Mr. McLaughlin were so situated that they could have seen Mr. Turner sign if they had looked," etc.

*Nicholas Mayer* testified that he did not see the deceased make his mark.

*James McLaughlin* testified that he did not see the deceased sign the will. Never talked with him about it in any way. Turner never acknowledged his signature to me. I made my mark, and John Mangus wrote my name for me at my request. I heard the will read over to the old man by Mrs. Mayer. I think the old man heard it. Mrs. Mayer brought the will into the room. Did not hear the old man say anything about the will at any time. The old man was bad sick in bed in the southwest corner of the room. I was near the opposite corner. I thought I was signing my name as a witness to the old man's will. I could have seen the old man sign the will if it had been necessary. I saw him sitting up in bed, etc.

*Mrs. Turner* says, after the will was read by Mrs. Mayer, she (Mrs. Mayer) got a book and took it to him. She wrote his name, her own name, and her husband's name. John Mangus wrote McLaughlin's name. This is the order in which they were signed.

With reference to the signing, attestation, and subscribing of the will, the court, of its own motion, charged the jury as follows:

"To satisfy the law the testator must, in some manner, communicate to the attesting witnesses, at the time they are

Turner and Others *v.* Cook.

called to sign as witnesses, the information that the instrument then present is of a testamentary character, and that he then recognizes it as his will and intends to give it effect as such. It must be declared to be his last will and testament by some assertion, or some clear assent in words or signs, and the assent or declaration must be unequivocal. It will not suffice that the witnesses have elsewhere, and from other sources, learned that the document which they are called to attest is a will, or that they suspect or infer from the circumstances and occasion that such is the character of the paper; the fact must, in some manner, be declared by the testator, in their presence, that they may not only know the fact, but that they must know it from him, and that he understood at the time of execution and publication, and that he designed to give effect to it as his will."

Our statute requires, in order to the valid execution of a will, that it shall be signed by the testator, or by some one in his presence, with his consent, and attested and subscribed in his presence by two or more witnesses. 2 G. & H. 555, sec. 18.

There is nothing in this statute which requires that the testator shall make known to the subscribing witnesses that the paper which they are to subscribe is a will. This court has decided, in the case of *Brown* v. *McAlister*, 34 Ind. 375, that no indication of such fact to the subscribing witnesses is necessary. The instructions given to the jury by the court, whatever warrant they may have in the statutes and decisions of the courts of other states, cannot, with reference to our statute of wills and the decisions of this court, be sustained. Nor need the testator see the witnesses subscribe their names to the will. It is enough if it be done in his presence, so that he could see it done if he desired to do so. *McElfresh* v. *Guard*, 32 Ind. 408. But the witnesses must know that the paper which they subscribe is the one which the testator signed. This is requisite to a legal attestation.

The court told the jury that if the making of the will

which was executed ten years before the one in question, was procured by undue influence, that would be a circumstance that the jury might consider in deciding whether or not the execution of this one was so procured. We think this instruction was not correct. The manner of the execution of that will was not in question. The defendants were not called upon to sustain it. · If it was made under undue influence, the making of it would not tend to support this one, on account of the similarity of its provisions. This the court correctly stated to the jury in another charge. But the fact that the former will was procured to be made by undue influence ten years before should not have been submitted to the jury as a circumstance against the will in question.

The court said to the jury, on request of the plaintiff, that before they could find the will in controversy to be the valid will of the testator, they must be satisfied from the evidence · that he had a sound and disposing mind, so as to be capable of making a disposition of his property with sense and judgment. An exception was taken to this instruction by the defendant.

This charge should not have been given. In the case of *Moore* v. *Allen*, 5 Ind. 521, it is decided that in an action to contest the validity of a will which has been admitted to probate, on the ground of the incapacity of the testator, the burden of proof is on the plaintiff, and he has the right to open and close the argument to the jury.

This ruling, doubtless, proceeds on the ground that sanity is presumed, and that, therefore, insanity must be shown by the party alleging it. There are many cases which make a distinction between wills and other instruments, such as deeds, etc., with reference to this rule, holding that as many wills are made by persons in sickness and in advanced age, the party propounding the will must show, in the first instance, that the testator was competent to make the will.

Our statute with reference to the proof of wills before the clerk provides that if it shall appear from the proof taken,

that the will was duly executed, the testator, at the time of executing the same, competent to devise his property, and not under coercion, such testimony shall be written down, etc., the will recorded, etc.   See 2 G. & H. 557, sec. 30.   It is best, however, that we adhere to the rule established, and hold that in this case the burden of the issue, as to unsoundness of mind, was on the plaintiff, and that the instruction given was, therefore, erroneous.

The court was requested by the defendants to instruct the jury as follows : " If the witnesses to the will were in such position that they could see, or have seen, the testator make his mark to the will, and all heard the same read before execution, this was a sufficient attestation."   The court refused to give this instruction, and to the refusal there was an exception.   We think this instruction was correctly refused. How can the subscribing witnesses know that they are placing their names to the same instrument which the testator has signed, unless they see him sign it, or he, in some way, makes known to them the fact that he has signed it ?

The judgment is reversed, with costs, and the cause remanded, with directions to the common pleas to grant a new trial.

*B. E. Rhoads* and *M. G. Rhoads*, for appellants.

*W. Eggleston* and *N. Harvey*, for appellee.