No. 16,377.

GURLEY ET AL. v. PARK.

WILL.—*Evidence.*—*Sanity.*—In an action contesting the validity of a will, alleging unsoundness of mind, testimony relating to the acts, conduct and language of the testatrix, in court, prior to her death, is admissible as bearing upon the question of sanity.

SAME.—*Evidence.*—*Reasonableness of Will.*—*Family Connections.*—*Property.*—In such case, the fact that the testatrix disinherited her only child, that he was needy and with a young family, are circumstances which may be considered in determining the question of sanity, the reasonableness of the will, the testatrix's family connections, and her property, being proper subjects of inquiry.

SAME.—*Witness.*—*Privileged Communications.*—*Physician and Patient.*—*Attorney and Client.*—Where a physician is present, in his professional capacity, when a testator makes his will, knowledge and information obtained then and there as to the sanity of the testator is privileged, and can not be brought in evidence, unless such privilege is waived; and the same is true of communications to the attorney who drew the will.

VERDICT.—*Sustained by the Evidence.*—That the verdict is sustained by the evidence, see opinion.

From the Morgan Circuit Court.

*C. G. Renner*, for appellants.

*A. M. Cunning*, for appellee.

HOWARD, J.—This was an action to set aside the last will of Mary B. Park, the complaint alleging unsoundness of mind and undue influence.

On the overruling of a demurrer to the complaint, there

was an answer filed, admitting the execution and probate of the will, but denying the other allegations of the complaint.

There were two trials before a jury.   On the first trial the jury disagreed.   On the last trial there was a verdict for the appellee, setting aside the will.

Mary B. Park was a widow, and the appellee is her only child.   The appellants are her nephew and niece. The errors discussed relate wholly to the evidence.

W. R. Harrison, a witness for the appellee, testified as to divorce proceedings brought at one time by Mary B. Park against her husband, detailing her charges against him with a view to showing her mental condition at that time.   It is objected that the pleadings in that case are the original and best evidence, and should be produced, or their absence accounted for.   An inspection of this testimony shows that it related to the acts, conduct and language of Mary B. Park in court, rather than to her pleadings.   There was also evidence given by the witness from which the court might infer that the papers referred to had been destroyed by fire.

It is objected that the court allowed evidence showing that the son of the testatrix had a wife and child to support, and was in straightened circumstances, being worth not over five or six hundred dollars at the time his mother's will was made.   We think this evidence was competent to go to the jury as affecting the question of the soundness of the mind of the testatrix.   The fact that a mother disinherits her only child, and that he is needy, with a young family on his hands, are circumstances which a jury may well consider in determining the question of her sanity.   While it is true that a person may disinherit his kindred, and give his property to whom he sees fit, yet such a disposition of property being unusual, the jury may rightfully examine into its reason-

ableness as affecting the question of unsoundness of mind in the testator, and with this view may look into the situation of his family connections and property. *Bundy* v. *McKnight, Exec.*, 48 Ind. 502; *Lamb* v. *Lamb*, 105 Ind. 456; *Clark* v. *Fisher*, 1 Paige Chancery (N. Y.), 171.

Dr. Charles M. Gravis was the attending physician of the testatrix during her last illness, and was present on the day of her death, at the time she made her will. Appellants offered to prove by this physician, as a witness, "from all his knowledge and information, and conversations he has had with her, and his acquaintance with her, and from what he saw and heard and knew of her there, that she was then a person of sound mind." The ruling of the court on this offer, as stated in the record, was: "There is no legal representative of Mrs. Park in this case because there is no administrator or executor. I shall sustain the objection, that the physician was there in his professional position." This ruling is in harmony with the uniform interpretation given in our decisions upon the statute protecting communications received by a physician from his patient. The policy of the law is to make the relation confidential and sacred. Only the patient himself, or, in case of his death, his legal representative, may waive the seal of secrecy and confidence.

In *Heuston* v. *Simpson*, 115 Ind. 62, it was said: "The law forbids the physician from disclosing what he learns in the sick room, no matter by what method he acquires his knowledge." See other authorities cited in the same case; also, *Pennsylvania Co.* v. *Marion*, 123 Ind. 415.

For a similar reason the evidence offered by the attorney who drew the will was properly excluded.

In *Jenkinson* v. *State*, 5 Blackf. 465, it was held that when an attorney is consulted on business within the scope of his profession, the relation of attorney and client

exists, and the communications on the subject between him and his client should be treated as strictly confidential.    And this ruling has always been adhered to by this court.    *Bigler* v. *Reyher*, 43 Ind. 112.

The client may waive the privilege, but otherwise it is inviolate.    *Pence* v. *Waugh*, 135 Ind. 143; *Bank, etc.,* v. *Mersereau*, 3 Barb. Ch. (N. Y.) 528.

In addition to what we have said as to the incompetency of the evidence offered, to be given by the physician and the attorney, it may be observed that no harm was done the appellants by its exclusion.    All the evidence so offered was given by several witnesses, many of them present at the time the will was executed.    *Andis* v. *Richie*, 120 Ind. 138.

Counsel claim that evidence given by Scott Maxwell was incompetent and should have been struck out on motion.    We have read the evidence, and while it had some tendency to show the disposition and habits of the testatrix, we do not regard it of much importance to either party.    It was admitted without objection, and we are of opinion that, even if it were important evidence, the motion to strike out came too late.    *Brown* v. *Owen*, 94 Ind. 31.

Counsel have reviewed the evidence very fully to show that it does not support the verdict upon the issues of unsoundness of mind and undue influence.

We can not, however, agree with the reasoning, or with the conclusion reached by counsel.    Not to speak of the deference due to the decision of the jury who heard and considered the evidence, we are satisfied that the great weight of the testimony given on the trial shows that the mind of the testatrix was, during all the latter years of her life, quite unbalanced.    After her husband's death she lived for the greater part of her life by herself, occasionally staying with some of her friends, and at differ-

ent times many different persons, strangers, and relatives, amongst them her son, to whom she proposed to leave her property.

Finally, a few hours before her death, and while in a very exhausted condition, she made a will in favor of a nephew and niece, whose father had persistently and for a long time pressed her to do so.

We can see no reason for disturbing the verdict of the jury.

The judgment is affirmed.

