Kern v. Kern.

---

## KERN v. KERN ET AL.

[No. 18,720.    Filed January 9, 1900.]

<div style="float:right">154   29<br>d156 540<br>154   29<br>o163  16</div>

EVIDENCE. — *Privileged Communications.* — *Attorney and Client.—Wills.*—Communications between a testator and his attorney in reference to the testator's will which was drawn by such attorney. are not privileged after the death of the testator. *Gurley* v. *Park*, 135 Ind. 440, overruled in part. *pp. 32–35.*

WILLS.—*Revocation by Execution of Inconsistent Will.*—The execution of a will inconsistent with a former will executed by the testator operates to revoke the first will. *p. 37.*

SAME.—*Revocation.—Revival.—Lost Will.*—Where a will has been revoked by the execution of a second will, and upon the death of the testator the second will cannot be found, the fact that the first will is found in a conspicuous place with valuable papers does not constitute a republication and revival of the first will. *pp. 37, 38.*

From the St. Joseph Circuit Court.    *Reversed.*

*N. L. Agnew, D. E. Kelly* and *T. E. Howard*, for appellant.

*A. L. Brick* and *Stuart McKibbin*, for appellees.

DOWLING, J.—This was an action to contest a will. It was tried by the court without the intervention of a jury, and a finding was made in favor of the appellees, who were

the defendants below. Over a motion for a new trial the court rendered judgment upon the finding. The contestor appealed, and the decision of the court overruling appellant's motion for a new trial is the error assigned. The contestor was the mother of the testator. The widow and other beneficiaries under the will were the defendants.

The facts set out in the complaint are, in substance, as follows: On the 20th day of September, 1897, Amon S. Kern died in the city of South Bend, St. Joseph county, Indiana, leaving an estate of the value of $75,000 in real and personal property, situated in said city of South Bend. He left surviving him no children, and no father, his only heirs at law being his mother, who is the appellant, and his widow, Ella Kern. On the 24th day of September, 1897, an instrument purporting to be the last will and testament of the said Amon S. Kern, and bearing date of April 6, 1890, was admitted to probate in the St. Joseph Circuit Court, in said St. Joseph county, Indiana, then in session. By the terms of said will the whole estate was devised and bequeathed to the widow of the said testator, subject to a residuary bequest to three other relatives, one of whom died without descendants before the said Amon S. Kern. The appellant, as the mother of the said Amon S. Kern, is by law entitled to inherit the undivided one-fourth of his estate, and the said Ella Kern, as the widow of the said Amon S., is entitled to take the undivided three-fourths of his estate, if the said Amon S. Kern died intestate. The supposed will of April 6, 1890, was invalid, and was wrongfully admitted to probate, for the reason that it was revoked by a subsequent will, duly executed in 1894, by the said Amon S. Kern, either expressly or by an inconsistent disposition of his estate. Prayer that the probate be set aside, etc. The complaint was duly verified, and an undertaking for costs was given, as required by the statute.

The defendants appeared, and filed a joint answer in denial. By consent, the cause was submitted to the court,

and, as has been stated, the trial resulted in a finding and judgment sustaining the will of 1890.

The grounds of appellant's motion for a new trial were, that the finding was contrary to law, and was not sustained by sufficient evidence, and that certain errors of law occurred on the trial in the rulings of the court in striking out evidence given for the appellant.

On the trial, Andrew Anderson, a witness for appellant, testified that he was a practicing lawyer of South Bend, Indiana; that he was acquainted with Amon S. Kern; that Kern was dead; that some three or four years before the date of the trial Kern came to the office of witness, and said that he wanted to make a will disposing of his estate; that witness thereupon called Mr. Bast, who was his stenographer, and dictated the will to him; that the stenographer brought the will into the front room of the office; that Mr. Kern signed it, and that he (Anderson) and Bast signed it as witnesses. Kern paid witness for his services, and carried the will away with him. Witness never saw it afterwards. Kern lived in South Bend. He owned a store. He was married, and he left as his widow the lady who was his wife when the will was executed.

After proof by another witness that the will drawn by Anderson, and executed by Kern, could not be found after Kern's death, the witness, Anderson, was asked to state the contents of that will. The question was objected to for the reason that the contents of the will were made known to Anderson as a privileged communication, notwithstanding the fact that the attorney became a subscribing witness to the will at the request of the testator. The court, not being prepared to pass upon the question raised by the objection, permitted the witness to state the contents of the will, but held the evidence under advisement. Anderson stated that, in the first part of the will, Kern disposed of all his estate in the following manner. Provision was made for his wife equivalent to one-third of his estate, and, in addi-

tion thereto, he gave her the use of the dwelling-house in which he lived; the remainder of the estate was devised to two brothers. The entire estate was given away. He made his brothers his residuary legatees.

Robert W. Bast, the stenographer in the office of Anderson, who took down the will in shorthand and afterwards reduced it to print, and who, also, was a subscribing witness to the will, was asked to state the contents of the will. The question was objected to upon the ground that the communication was a privileged one as to Anderson, the attorney, and that the privilege extended to the knowledge acquired by the witness as the law clerk of Anderson. The objection was overruled, and the witness testified substantially as Anderson had done.

Appellant gave in evidence the will of Amon S. Kern, dated April 6, 1890, with the probate of the same, whereby the testator devised the whole of his estate to his wife, Ella Kern, subject to a residuary interest in one-half of what might remain at her death devised to three nephews. Ella Kern was nominated as sole executrix. Other evidence was introduced by appellant, but it is not necessary that we should set it out.

The plaintiff below having rested, the defendants introduced evidence as to the finding of the will of 1890, and the ineffectual search for the will prepared by Anderson.

At this point, the court announced its decision upon the objections to the testimony of Anderson and Bast, and struck out all of the evidence relating to the contents of the will drawn by Anderson.

The question is presented, whether communications between a testator and his solicitor or attorney, in reference to the testator's will, are privileged after the death of the testator, in a contest between his heirs at law and the beneficiaries under the will.

The statute of this State, in regard to confidential communications made to an attorney in the course of his pro-

Kern *v.* Kern.

fessional business, and as to advice given in such cases, has not changed the rule of the common law. §505 Burns 1894, §497 Horner 1897. This rule does not apply to testamentary dispositions where the controversy is between the heirs and devisees of the testator. In such cases it is said that the very foundation upon which the rule proceeds seems to be wanting. The leading case upon this subject is *Russell* v. *Jackson,* 9 Hare 387, in which Lord Justice Turner says, that, "The disclosure in such cases can affect no right or interest of the client. The apprehension of it can present no impediment to the full statement of his case to his solicitor,  *  *  *  and the disclosure, when made, can expose the court to no greater difficulty than presents itself in all cases where the courts have to ascertain the views and intentions of parties, or the objects and purposes for which the dispositions have been made."

In Hageman's Priv. Com., §86, the rule laid down in *Russell* v. *Jackson, supra,* is concisely stated thus: *"That communications between a testator and his solicitor in reference to the testator's will, are not privileged after the death of the testator: contra as to communications between the same solicitor and the executors."*

*Russell* v. *Jackson, supra,* is cited with approval in Wharton on Evidence, and, in treating upon the subject of professional privilege, it is said: "The privilege, it should also be remembered, is meant to protect the living in their business relations, and cannot be invoked when the question arises as to the intention of a deceased person in respect to the disposition of his estate." Wharton on Ev. (3rd ed.), §591.

In *Graham* v. *O'Fallon,* 4 Mo. 338, it is said, that an attorney who draws up a will is entirely competent to testify to its contents in order to set it up as a lost will, and his testimony is not subject to the objection that it discloses the confidential communications of a client.

This view of the rule as to such communications, and the

competency of the solicitor to testify to them, is sustained by the decisions in the following, among other cases: *Blackburn* v. *Crawfords*, 3 Wall. (U. S.), 175, 18 L. Ed. 186; *Scott* v. *Harris*, 113 Ill. 447; *Sheridan* v. *Houghton*, 6 Abb. N. Cas. 234, 16 Hun 628; *Pence* v. *Waugh*, 135 Ind. 143; *Denning* v. *Butcher*, 91 Iowa 425, 59 N. W. 69; *Doherty* v. *O'Callaghan*, 157 Mass. 90, 31 N. E. 726, 17 L. R. A. 188,

It is urged, however, on behalf of the appellee, that this court has held that evidence of this character is inadmissible, and we are referred to the cases of *Gurley* v. *Park*, 135 Ind. 440, *Pence* v. *Waugh*, *supra*, *Brown* v. *McAlister*, 34 Ind. 375, and *Turner* v. *Cook*, 36 Ind. 129, as authorities supporting this view.

*Gurley* v. *Park*, *supra*, was an action to set aside a will on account of the unsoundness of the mind of the testatrix, and because its execution was procured by undue influence. The court say, on page 442: "In *Heuston* v. *Simpson*, 115 Ind. 62, it was said: 'The law forbids the physician from disclosing what he learns in the sick room, no matter by what method he acquires his knowledge.' See other authorities cited in the same case; also *Pennsylvania Co.* v. *Marion*, 123 Ind. 415.

"For a similar reason the evidence offered by the attorney who drew the will was properly excluded.

"In *Jenkinson* v. *State*, 5 Blackf. 465, it was held that when an attorney is consulted on business within the scope of his profession, the relation of attorney and client exists, and the communications on the subject between him and his client should be treated as strictly confidential. And this ruling has always been adhered to by this court. *Bigler* v. *Reyher*, 43 Ind. 112.

"The client may waive the privilege, but otherwise it is inviolate. *Pence* v. *Waugh*, 135 Ind. 143; *Bank, etc.*, v. *Mersereau*, 3 Barb. Ch. (N. Y.), 528."

While the rule announced by the court in *Gurley* v.

*Park, supra*, is doubtless the correct one in disputes between the client's representatives on the one hand, and strangers on the other, we do not think it applies where both the litigating parties claim under the client. The attention of the court does not appear to have been called to this distinction, and none of the cases bearing upon it is referred to in the opinion. We regard this qualification of the general rule as a very material one, and, to the extent that the opinion in *Gurley* v. *Park, supra*, conflicts with the view we have expressed, that case is overruled.

In *Pence* v. *Waugh*, 135 Ind. 143, it was held that, by selecting the attorney who drew the will as one of the subscribing witnesses, the client waived the objection to the competency of the witness arising from the professional relation such witness sustained to the client. In the opinion, the court cites, in support of its conclusions, the decision *In re Coleman*, 111 N. Y. 220, 19 N. E. 71, and *Alberti* v. *New York, etc., R. Co.*, 118 N. Y. 77, 23 N. E. 35, 6 L. R. A. 765. The court says, in the course of the opinion: "The privilege of the statute requires no express waiver in this State, and it may be waived not only by express waiver, but by implication." This case lends no support to the position of counsel for appellees.

The cases of *Brown* v. *McAlister*, 34 Ind. 375, and *Turner* v. *Cook*, 36 Ind. 129, decide, only, that it is not necessary to the due execution of a will that the testator should in any manner indicate to the witnesses who attest it that the instrument is the will of the person executing it.

The next question we are called upon to determine is the legal effect of the revocation by the testator of the will of 1894. Was the will of 1890 thereby revived?

There is no doubt that at common law the revocation of a subsequent inconsistent will, revoking a former will, operated to revive the former, when such former will was not destroyed by the testator. In *Harwood* v. *Goodright*, 1 Cowp. 87, 92, Lord Mansfield said: "If a testator makes

one will and does not destroy it, though he makes another at any time virtually or expressly revoking the former; if he afterwards destroy the revocation, the first will is still in force and good."

In 29 Am. & Eng. Ency. of Law, 288, it is said: "Where the latter of two inconsistent wills was revoked by the testator in his lifetime, it was held by the courts of common law that the earlier will was thereby revived, and, unless afterwards revoked by some subsequent act, came into operation on his decease, whether the later will contained an express clause of revocation or not. In the ecclesiastical courts it was held that the revocation of the later will raised no presumption in favor of the revival of the earlier will, but that the question depended upon the intention of the testator as shown by the peculiar facts and circumstances of the case, and was open to decision either way. The statute of Victoria abolished the doctrine by expressly providing that no will or codicil, or any part thereof, which shall be in any manner revoked, shall be revived otherwise than by the reëxecution thereof, or by a duly executed codicil showing an intention to revive the will. In several of the States similar statutes exist, under which the revocation of the second will does not revive the first, unless such intent appear in the terms of the revocation, or the first will be duly republished afterwards. In the absence of such legislation the rule varies greatly in different states."

Commenting on this subject, it was well said by Burks, J., in *Rudisill* v. *Rodes*, 29 Gratt. (Va.), 147, 149: "The effect of the rule in the law courts was to exclude arbitrarily all extrinsic evidence of intention upon the question of revival, and thus oftentimes, to set up a will contrary to the intention of the testator; while the rule in the ecclesiastical courts threw the door wide open to the admission of such evidence, and suffered the intention of the testator to be determined by 'the uncertain testimony of slippery memory.' It was the object of the English statute, by the 22nd sec-

tion, to abrogate both of these rules, which were attended with the mischiefs just indicated, and to establish in their stead a safer rule, by which the intention of the testator would be manifested with more certainty, and be less liable to be defeated by acts and circumstances of an equivocal character."

The statutes of this State establish the rule governing this case. §2729 Burns 1894, §19, 2 R. S. 1852, p. 308, §30 R. S. 1843, p. 491.

The provision of the statutes to which alone we must look declares that: "No will in writing, nor any part thereof, except as in this act provided, shall be revoked, unless the testator, or some other person in his presence and by his direction, with intent to revoke, shall destroy or mutilate the same; or such testator shall execute other writing for that purpose, signed, subscribed and attested as required in the preceding section. And if, after the making of any will, the testator shall execute a second, a revocation of the second shall not revive the first will, *unless it shall appear by the terms of such revocation to have been his intent to revive it, or, unless after such revocation he shall duly republish the previous will.*" §2729 Burns 1894, §2559 R. S. 1881 and Horner 1897.

The execution by Kern of the will of 1894, which made a disposition of his estate inconsistent with that of the will of 1890, operated to revoke the first will. *State* v. *Crossley,* 69 Ind. 203; *Burns* v. *Travis,* 117 Ind. 44.

The will of 1894, having been in the possession of the deceased, and not having been found after the death of Kern, the presumption is that it was destroyed by him *animo revocandi. McDonald* v. *McDonald,* 142 Ind. 55; *Goods of Mitcheson,* 32 L. J. N. S. (P. & M.) 202.

The first will having been effectually revoked, it could be revived only (1) by a writing executed by him for that purpose, signed, subscribed, and attested, as in the case of a last will; or, (2) by due republication of such previous

will. There is no claim on the part of appellees that any such writing was executed, and it cannot be said that there was proof of the republication of the will of 1890. The preservation of the will of 1890, and the fact that it was found in a conspicuous place among the valuable papers of the deceased, did not constitute a republication. No oral declaration by the decedent, or other unequivocal act indicating an intention to republish the will of 1890 was shown. Schouler on Wills, §§441, 442, 444, 445; *Abney* v. *Miller*, 2 Atk. 593; *Barker* v. *Bell*, 46 Ala. 216; *In re Lones*, 108 Cal. 688, 41 Pac. 771; *Wolf* v. *Boilinger*, 62 Ill. 368; *Beaumont* v. *Keim*, 50 Mo. 28.

We conclude, therefore, that the will of 1890 was not republished, or otherwise revived, by any act of the decedent, within the meaning of §2729 of the statute.

We have carefully examined the cases of *Randall* v. *Beatly*, 31 N. J. Eq. 643, *Flintham* v. *Bradford*, 10 Pa. St. 82; *Neff's Appeal*, 48 Pa. St. 501, *Peck's Appeal*, 50 Conn. 562, *Cheever* v. *North*, 106 Mich. 390, 64 N. W. 455, 37 L. R. A. 561, and all other authorities referred to in the several briefs of counsel for appellees. There is a conflict among the decisions upon the questions arising in this case, but the great weight of authority seems to sustain the views we have expressed.

For the error of the court in striking out the evidence of Anderson and Bast, and for the reason that the finding of the court was contrary to law, the judgment is reversed.