SCHUTZ, ET AL. *v.* LEARY, ET AL.

[No. 18,185. Filed June 23, 1952. Rehearing denied October 23, 1952. Transfer denied November 25, 1952.]

101

*Straley Thorpe, Byron E. Bamber,* and *Guy W. Slaughter,* all of Hammond, for appellants.

*Wasson J. Wilson,* and *Wilson, Crites & Wilson,* (of counsel) all of Hammond, for appellees.

BOWEN, J.—This is an appeal from a judgment in an action in which the appellants, as plaintiffs below, brought an action to partition real estate. The first paragraph of the complaint contained the usual allegations for the partition of real estate and asked that a commissioner be appointed to make sale of the real estate. The second paragraph of the complaint charged that one Mary Schutz was the owner of the real estate in question; that her grandson, one John E. Leary, through undue influence, caused the said Mary Schutz to execute a warranty deed to such real estate to him which was not her free and voluntary act and deed. The third paragraph of the complaint alleged that the said Mary Schutz was of unsound mind at the time she executed such deed to John E. Leary, and asked that the deed from the said Mary Schutz to John E. Leary be set aside and declared null and void, and that the appellants and the appellees, Rose Leary and Emma Harlson, be adjudged the owners of the real estate in equal proportions, and that a commissioner be appointed to make sale of the same and distribute the proceeds between the parties thereto.

Issues were joined upon four paragraphs of answer filed by appellees in denial and alleging that John E. Leary became and is now the owner of the fee simple title of the real estate in question. John E. Leary filed

a counter-claim asking that his title to the real estate be quieted to which the appellants filed an answer in denial.

At the request of the parties, the court entered special findings of facts and conclusions of law therein denying the appellants any relief and rendered judgment for costs against the appellants.

Errors assigned for reversal are that the trial court erred in overruling the appellants' separate and several motion for a new trial, and that the trial court erred in overruling the appellants' verified motion and petition to correct the "transcript of the bill of exceptions." Grounds of the motion for a new trial not waived in this appeal are that the decision of the court is not sustained by sufficient evidence and is contrary to law; that the court erred in permitting the witness, attorney Timothy P. Galvin, to testify on behalf of the defendants over the objections of the plaintiffs, and to answer certain questions, and in overruling plaintiff's motion to strike out certain answers of the witness, Timothy P. Galvin, and in permitting such witness to give an opinion as to the soundness or unsoundness of the mind of Mary Schutz, and that the court erred in permitting Edmond J. Leeny, an attorney of the Gavin firm, to answer certain questions, and in overruling plaintiffs' motion to strike out the answer of Edmond J. Leeny, and in sustaining defendants' motion to strike out an answer of the witness, Edward Schutz.

Appellants' Proposition No. 1 is that the trial court erred in overruling appellants' motion to correct the reporter's transcript which became the bill of exceptions to include therein the voluntary statement of appellants' counsel, Straley Thorpe, as an insertion therein, which statement was in substance that the appellants waived

any objections to the competency of any witness except lawyers.

Such remarks if actually made were a proper part of the bill of exceptions containing the evidence, but the reporter's certified transcript of the evidence fails to show such remarks to have been made, and the effect of the court's ruling in its refusal to sustain appellants' motion to insert such remarks is that it constitutes a finding that such remarks were not made.

Appellants' second proposition is that the trial court erred in overruling appellants' separate and several motion for a new trial. Assignments in the motion for a new trial relate to the alleged error in the admission of testimony of Timothy P. Galvin and Edmond J. Leeny, who was a member of the law partnership of the Timothy P. Galvin firm, and who notarized the deed in question. The grounds upon which appellants based their alleged claim of error that such attorneys were incompetent to testify concerning the execution of the deed in question, or as to the soundness of mind of deceased, Mary Schutz, are that their testimony and the matters concerning which they testified were observed during the relationship of attorney and client and were based upon conversations and communications between Mary Schutz and her attorneys, and that they were not competent to so testify upon matters so learned and observed because they were required to state facts in order to give their opinion, and that such facts in this case were privileged communications, citing *Gurley* v. *Park* (1893), 135 Ind. 440, 35 N. E. 279, with other similar authorities. However, the case of *Kern* v. *Kern* (1899), 154 Ind. 29, 55 N. E. 1004, overruled *Gurley* v. *Park, supra,* in stating a qualification of the general rule as to privileged com-

munications, and in disposing of such question, used the following language:

"The question is presented, whether communications between a testator and his solicitor or attorney, in reference to the testator's will, are privileged after the death of the testator, in a contest between his heirs at law and the beneficiaries under the will.

"The statute of this State, in regard to confidential communications made to an attorney in the course of his professional business, and as to advice given in such cases, has not changed the rule of the common law. . . . This rule does not apply to testamentary dispositions where the controversy is between the heirs and devisees of the testator. In such cases it is said that the very foundation upon which the rule proceeds seems to be wanting. The leading case upon this subject is *Russell* v. *Jackson,* 9 Hare 387, in which Lord Justice Turner says, that, 'The disclosure in such cases can affect no right or interest of the client. The apprehension of it can present no impediment to the full statement of his case to his solicitor, . . . and the disclosure, when made, can expose the court to no greater difficulty than presents itself in all cases where the courts have to ascertain the views and intentions of the parties, or the objects and purposes for which the dispositions have been made.'

"In Hageman's Priv. Com., No. 86, the rule laid down in *Russell* v. *Jackson, supra,* is concisely stated thus: *That communications between a testator and his solicitor in reference to the testator's will, are not privileged after the death of the testator. . . .*

"*Russell* v. *Jackson, supra,* is cited with approval in Wharton on Evidence, and, in treating upon the subject of professional privilege, it is said: 'The privilege, it should also be remembered, is meant to protect the living in their business relations, and cannot be invoked when the question arises as to the intention of a deceased person in respect of the disposition of his estate.' "

In overruling *Gurley* v. *Park, supra,* which held that the evidence was inadmissible, the court at pages 34 and 35 said:

"While the rule announced by the court in *Gurley* v. *Park, supra,* is doubtless the correct one in disputes between the client's representatives on the one hand, and strangers on the other, *we do not think it applies where both the litigating parties claim under the client.* The attention of the court does not appear to have been called to this distinction, and none of the cases bearing upon it is referred to in the opinion. We regard this qualification of the general rule as a very material one, and, to the extent that the opinion in *Gurley* v. *Park, supra,* conflicts with the view we have expressed that case is overruled."

The general law on the subject of privileged communications by a client to an attorney who has drafted his will seems to be in accord with the decision in the Kern case, as it is stated in 58 *American Jurisprudence,* page 283.

While the qualification of the privileged communications rule in this state has not been extended to apply to such communications between an attorney and a client in the preparation and execution of a deed, it is apparent upon sound reasoning and a consideration of the authorities that the exception to the general rule regarding privileged communications should apply in the case of the circumstances surrounding the preparation and execution of a deed the same as it does in the case of the communications by a client to an attorney who drafted his will.

The reason given for the exception in the case of a will is that it cannot be said to be for the interest of a testator in a controversy between parties, all of whom claim under him to have those declarations and transactions occurring between the

parties leading up to the execution of the will excluded which are necessary to the proper fulfillment of his will.

The same reasoning applies to a controversy between the devisees of a deceased grantor and the heirs at law of such deceased grantor. In the case of either a deed after the death of the grantor or a will, if such instrument does not prevail, the heirs will take.

Appellants have assigned error in the action of the court in striking out the answer of Edward Schutz, one of the appellants, given to a question on direct examination, in which he related a conversation with Mary Schutz in which she purportedly said: "They say you are stealing my money. The Learys say that you are stealing my money, so get out of here and don't come back."

Such alleged error, at most, would be harmless error since it appears from an examination of the record that substantially the same answer was given by the witness to such question without any objection thereto.

The remaining assignments of error are that the decision is not sustained by sufficient evidence and is contrary to law. Five witnesses testified that Mary Schutz was of sound mind. The record shows that she managed her bank account until her death, that she had been a business woman engaged in real estate transactions, and that she was a corporate officer and director.

There was evidence of her creation of a trust of her 52 shares of stock of the Schutz Renting and Realty Company, Inc., shortly before her death. Under that trust she retained a life estate and provided that at her death, the stock should carry over to her children. She revoked her will and thereby created a condition whereby she died intestate, and then later

executed the gift deed in qustion. There is sufficient substantial evidence in the record for the trial court to have drawn a reasonable inference that the decedent, Mary Schutz, had sufficient mind and memory to comprehend the nature of her business in which she was engaged and to exercise her own will with reference thereto. *Deckard* v. *Kleindorfer* (1940), 108 Ind. App. 485, 29 N. E. 2d 997; *Keplinger* v. *Ward* (1945), 116 Ind. App. 517, 64 N. E. 2d 307, 65 N. E. 2d 644; *Daugherty* v. *Daugherty* (1944), 115 Ind. App. 253, 57 N. E. 2d 599; 16 *American Jurisprudence*, 487.

Appellants' main contention, however, is based upon the evidence in support of the second paragraph of the complaint which charged that undue influence had been brought to bear upon the grantor who was an old and infirm person, and alleged that such undue influence was practiced by her grandson, John Leary, who occupied a confidential relationship with the decedent and grantor in the deed. There is no presumption of undue influence in a conveyance to a child or grandchild merely because of such relationship nor is a presumption indulged because of a gift motivated by graditude for favors shown. *Baker* v. *McCague* (1947), 118 Ind. App. 32, 75 N. E. 2d 61.

It appears that the decedent, Mary Schutz, grantor of the deed in question, acted on the advice of a lawyer of her own choosing. The deed was executed in her presence and the presence of an attorney who fully explained its import to her. There is evidence that she told several persons that she wanted her grandson to have the house after her death, and there were sufficient circumstances shown in the record from which reasonable inferences could be drawn that there was mutual affection between the grandmother

and grandson, that he was good to her, and that she considered him as a favorite.

While there is some conflict in the evidence, it cannot be said as a matter of law that undue influence was practiced upon Mary Schutz at the time of the ■ execution of the deed in question. *Bowden* v. *Elston Bank* (1947), 117 Ind. App. 612, 75 N. E. 2d 170; *Daugherty* v. *Daugherty, supra.*

The court will not disturb the findings of the trial court unless the evidence is so strong that a reasonable person could only reach the opposite conclusion, ■ and from a consideration of the whole record, it does not appear in the instant case that the only reasonable inference to be drawn from the evidence is that undue influence was practiced upon the decedent, nor that she did not have sufficient mental capacity to execute the deed in question. On the contrary, there is substantial evidence in the record establishing that she was of sound mind at the time the deed in question was executed, and that her grandson, John Leary, did not procure such deed from her through undue influence, and that the deed was her free and voluntary act. We find no reversible error, and the judgment is, therefore, affirmed. *Baker* v. *McCague, supra; Meyers* v. *Emerson* (1948), 118 Ind. App. 462, 81 N. E. 2d 378.

NOTE.—Reported in 106 N. E. 2d 705.