## WALLACE E. PECK'S APPEAL FROM PROBATE.

The revocation of a former will by the mere execution of a later one, is ambulatory, and does not take effect till the second will becomes operative by the death of the testator.

And the revocation of the second will will revive the former.

How it would be where the second will in express terms revokes the former: Quære. The weight of authority is in favor of the doctrine that the revoking clause does not take effect till the will becomes operative by the death of the testator.

The question is materially affected by the statute of 1821 with regard to the revocation of wills, which was passed since the decision of this court in *James* v. *Marvin*, 3 Conn., 576.

That statute has been somewhat changed in its phraseology, in the later revisions, but without essentially changing its meaning.

APPEAL from a decree of a court of probate disallowing a document offered as the will of Lucy A. Peck; taken to the Superior Court in Hartford County, and tried to the court before *Hovey*, *J.* Facts found and probate decree affirmed, and motion in error by the appellant. The case is sufficiently stated in the opinion.

*H. S. Barbour* and *C. W. Gillette*, for the plaintiff in error, cited 1 Wms. on Exrs., 197; 1 Jarm. on Wills, 136;

2 Am. Lead. Cas., 482; 1 Redf. on Wills, 308, 328, 330, 375; 4 Kent Com., 531; *Goodright* v. *Glazier*, 4 Burr., 2512; *Harwood* v. *Goodright*, Cowp., 87, 92; *Welch* v. *Phillips*, 1 Moore P. C. C., 299, 302; *Cutto* v. *Gilbert*, 9 id., 131; *Brown* v. *Brown*, 8 El. & Blackb., 875; *In re Brown*, 4 Jur. N. S., 244; *Belden* v. *Carter*, 4 Day, 66; *Witter* v. *Mott*, 2 Conn., 67; *James* v. *Marvin*, 3 id., 576; *Card* v. *Grinman*, 5 id., 164, 168; *Boudinot* v. *Bradford*, 2 Dall., 266; *Lawson* v. *Morrison*, id., 286; *Colvin* v. *Warford*, 20 Maryl., 357; *Marsh* v. *Marsh*, 3 Jones Law, 77; *Flintham* v. *Bradford*, 10 Penn. St., 82, 90; *Randall* v. *Beatty*, 31 N. Jer. Eq., 643; *Matter of Simpson*, 56 How. Pr. R., 125; Conn. Civil Officer, (ed. 1880,) 400.

*R. D. Hubbard* and *F. L. Hungerford*, for the appellees, cited Gen. Statutes, p. 370, § 7; 1 Jarman on Wills, (5th ed.,) 336; Powell on Devises, 535; 2 Archb. N. P., 441; 1 Redf. on Wills, 350, 351, 361, 364; 2 Greenl. Ev., §§ 681, 683; 4 Kent Com., 650; *Brown* v. *Brown*, 8 El. & Blackb., 885; *Moore* v. *Moore*, 1 Phill. Eccl. R., 406, 412; *Powell* v. *Powell*, L. Rep., 1 Prob. & Div., 209; *Wood* v. *Wood*, id., 309; *Dempsey* v. *Lawson*, L. Rep., 2 Prob. Div., 98; *Belden* v. *Carter*, 4 Day, 75; *Witter* v. *Mott*, 2 Conn., 67; *In re Johnson's Will*, 40 id., 588; *Laughton* v. *Atkins*, 1 Pick., 545; *Jones* v. *Murphy*, 8 Watts & Serg., 275, 295; *Rudy* v. *Ulrich*, 69 Penn. St., 177, 183; *Walton* v. *Walton*, 7 Johns. Ch., 269; *Ludlum* v. *Otis*, 15 Hun, 413; *Bohanon* v. *Walcott*, 1 How. (Miss.), 336; *Smith* v. *McChesney*, 15 N. Jer. Eq., 359; *Exr. of Larrabee* v. *Larrabee*, 28 Verm., 274; *State ex rel. Brown* v. *Crossley*, 69 Ind., 203, 211.

CARPENTER, J. In 1875 Lucy A. Peck made a will, which was duly executed. In 1880 she made another, which was inconsistent with the former. Not long afterwards she died. The later will has never been found; the former was carefully preserved by her and found among her valuable papers after her death. The new will did not expressly revoke the old. The testatrix was advised by the scrivener who wrote the last will to destroy the first; but it

was not done, and when he left the room the two wills were lying upon the table. No one now living knows of the existence of the last will after that time.

Upon these facts the Superior Court, as a conclusion of law, found the issue for the appellees, and affirmed the judgment of the court of probate rejecting the first will. The case is before us on a motion in error.

The defendants in error contend that the execution of the latter will operated immediately as a revocation of the former, and that the former was not revived by the destruction of the latter. The Superior Court sustained this claim.

Prior to 1821 any will might be revoked in writing, and it was not necessary that the writing should be executed with every particular formality. It was then held that a revocation contained in another will was not ambulatory, but took effect immediately, and that the will revoked could not be revived without a re-publication. *James* v. *Marvin*, 3 Conn., 576. In 1821 a statute enacted that "no devise of real estate shall be revoked otherwise than by burning, * * or by some other will or codicil in writing, declaring the same, signed by the testator in the presence of three or more witnesses, and by them attested in his presence." That section required that a written revocation should be in another will; and so the law continued until the revision of 1849, in which the words "declaring the same" were omitted and have not since appeared in the statute. In that revision the section concluded as follows—"or by some other will or codicil duly executed according to this act."

In 1875 the phraseology was further changed, so that the whole section now reads—"No will or codicil shall be revoked, except by burning, canceling, tearing, or obliterating it by the testator, or by some person in his presence, by his direction; or by a later will or codicil." The change in the words however did not change its meaning, so far as it relates to the question now under consideration.

Prior to 1821, as well as since, the law was so that a later will when it took effect by the death of the testator revoked a prior inconsistent one. That proposition is not ques-

tioned. If *James* v. *Marvin* is an authority before the statute, a subsequent will, containing no revocatory clause, did not, during the life time of the testator, revoke a prior will. In respect to that point we do not think the statute was intended to make any change.

In the case cited the court in fact decided two questions: —1st, that a clause in a will revoking former wills took effect immediately; and 2d, that if the subsequent will contained no such clause it did not affect former wills until it became operative. The first question was directly before the court, the second was only incidentally involved.

Now the second question is directly raised and the first is incidentally involved. In the former case the statute was not in force, now it is. The statute comes before us now for the first time for a construction. And it must be remembered that the statute changes the aspect of the first question. It is not now what it was when *James* v. *Marvin* was decided. Then any written declaration to that effect revoked a will irrespective of any statute and without regard to the death of the testator. Now the statute requires that the writing, in order to have that effect, must itself be a will or codicil, and executed with all the formalities required for such instruments. Under the statute it may be claimed, and the claim sustained by very respectable authorities, and supported by reasoning of considerable force, that the will, even though it contain a clause expressly revoking former wills, must take effect as a will before the revoking clause will be operative. Thus it will be seen that this precise question as it now presents itself was not decided in *James* v. *Marvin*, and has never been decided by this court. We do not propose to decide it now, but as it is very difficult to consider fully and satisfactorily the real question in this case without discussing to some extent the other question, we will briefly refer to the state of the law on that question.

The law as laid down by HOSMER, C. J., relating to the effect of a revoking clause in a subsequent will, is questioned by an eminent writer on the law of wills.

1 Redfield on Wills, 328. After referring to the Connecticut case he says—"This doctrine has an air of plausibility, from the fact that an instrument of revocation alone would unquestionably have this effect. But that would show a present purpose of becoming intestate, carried into effect as far as practicable before death. But the making of a will, with a revocatory clause, is made dependent, in some sense, upon the subsequent will going into operation. And there is ordinarily no purpose of having the revocatory clause operate except upon that condition. The whole instrument is, therefore, ambulatory, and when destroyed it all ceases to have any operation." And such seems to be the doctrine of *Laughton* v. *Atkins,* 1 Pick., 535, *Reid* v. *Borland,* 14 Mass, 208, *Simbery* v. *Mason & Hyde,* Comyns, 451, *Hyde* v. *Hyde,* 3 Chan. Rep., 155, and *Onions* v. *Tyrer,* 2 Vern., 742.

On the other hand *James* v. *Marvin,* we are inclined to think, has been regarded as law by the profession under the statute for more than sixty years. And there are many other cases which seem to assume that such is the law without directly deciding the point.

The weight of authority seems to be in harmony with the views expressed by Mr. Redfield. We refer to it not for the purpose of deciding the point, but for the purpose of applying the reasoning and the authorities cited to the point we are now considering; and we think they apply with much greater force to a will not containing the revocatory clause. We are decidedly of the opinion that if we hold that the execution of the second will operated to revoke the first, we shall go counter to the prevailing current of authority, and produce a greater discordance between our own law and the laws of other jurisdictions than now exists; a result certainly which it is desirable to avoid.

We also think that to be the most reasonable view. The testatrix by executing the second will evinced no intention to become intestate, but rather a contrary intention. By destroying the last will and carefully preserving the first she affords satisfactory evidence that she intended until the

very last to die testate, and that that should be her will. In the absence of an express provision to that effect we cannot presume that the legislature intended that the mere execution of a will should in all cases revoke a prior will. Such a construction would in many cases defeat the manifest intention of the testator. The statute requires a "later will or codicil." We think that means an operative will or codicil.

In *James* v. *Marvin* HOSMER, C. J., says:—" The revocation effected by a will *merely* is not instantaneous, but ambulatory until the death of the testator; for although by making a second will the testator intends to revoke the former, yet he may change his intention at any time before his death." This doctrine is consistent with the statute; and although the case did not call for it, yet it has been understood to be the law of this state for more than sixty years. We see no reason for changing it, even if the law in some jurisdictions is different.

We would say however that we have carefully examined the cases cited by the counsel for the appellees, and find that many of them are cases in which the later wills became operative as wills; and of course the language of the courts must be interpreted with reference to that circumstance, and cannot properly be applied to a case like this.

The judgment of the Superior Court was erroneous and is reversed.

In this opinion the other judges concurred.