## CHEEVER *v.* NORTH.

1. WILL—REVOCATION.

The execution of a will containing no express clause of revocation does not, of its own force, operate to revoke a former will; and the subsequent destruction of the later will by the testator will effect a revival of the earlier one. A contrary rule is not implied by 2 How. Stat. § 5793, providing that no will shall be revoked except " by some other will or codicil " or by other specified means, but the statute is merely declaratory of the common-law rule that a later will, becoming operative by the death of the testator, revokes a prior inconsistent will.

2. SAME—BURDEN OF PROOF

One who claims that a will was revoked by the subsequent execution of another will, which was afterwards destroyed by the testator, has the burden of proving that the later will contained an express clause of revocation.

3. WILL—EVIDENCE OF CANCELLATION.

Proof that a will was kept in th⸱ cus⸱ ⸱dy of the testator, and could not be found after his death, raises a presumption that it was destroyed by him with the intention of canceling it.

4. EVIDENCE—EXISTENCE OF CODICIL TO WILL.

Testimony tending to show that a testator exhibited a paper which was signed and witnessed, that such paper assumed to dispose of but a part of the testator's property, and that he said at the time that it made some slight alterations in the terms of his original will, of which certain persons mentioned by him were executors, is sufficient to justify a finding that the paper was in fact a codicil to an existing will wherein said parties were named as executors.

5. TRIAL—STATEMENTS OF COUNSEL—HARMLESS ERROR.

Upon the trial of an issue whether a will presented for probate had been revoked by a later will, a statement by proponent's counsel that he proposed to show that the subsequent will had been destroyed by the contestant was not prejudicial to the latter, who was a beneficiary under the later will, where the jury were instructed that, if such will was destroyed by one other than the testator, it might be probated.

6. COSTS—APPEAL FROM PROBATE COURT.

Under 2 How. Stat. § 6791, providing that in cases contested in probate court, or in the circuit upon appeal, the court may award costs to either party, in its discretion, to be paid by the other party or out of the estate in controversy; and 2 How. Stat. § 8982, providing that costs upon appeal from the probate court shall be paid by the appellant or respondent, as directed by the court,—no more than the actual taxable costs are allowable to a contestant of a will upon its admission to probate in the circuit court.

Error to Washtenaw; Kinne, J. Submitted June 11, 1895. Decided September 26, 1895.

Noah W. Cheever and another presented for probate the will of Merchant H. Goodrich, deceased. From an order probating the will, A. Anna North and others appealed to the circuit court. Contestants bring error from a judgment admitting the will to probate, and proponents assign error upon that portion of the judgment awarding costs to contestants. Judgment modified and affirmed.

*Noah W. Cheever (John F. Lawrence* and *A. J. Sawyer,* of counsel), for proponents.

*Thompson & Harriman (Thomas A. Bogle,* of counsel), for contestants.

MONTGOMERY, J.  This is an appeal from the judgment of the circuit court probating the will of Merchant H. Goodrich, who died February 19, 1892.  The will probated bore date May 12, 1888.  It was in testimony, and not disputed, that deceased, in December, 1888, or January, 1889, executed another will, to which Dr. John Greenshields and R. L. Parkin were witnesses.  There was also testimony tending to show that the will offered for probate was found among the papers of deceased, and that no other will or codicil was found.  The jury found, in answer to special questions, that the Greenshields and Parkin will was destroyed by decedent, and that a codicil, of which an abstract was in evidence in the case, was executed as a codicil to the will offered for probate, and that Goodrich also destroyed this codicil.  The jury further found that the subsequent will, known as the "Greenshields and Parkin Will," was executed by Goodrich, and that it made a complete disposition of his estate.  There was no finding by the jury, nor was there any evidence, upon the subject of whether the subsequent will contained a revocation of the prior will, in terms.

1.  The circuit judge charged the jury, in effect, that a second will, which contained an express revocation of a prior will, would have the effect to revoke it, but that, if the later will contained no clause revoking the former will, the subsequent destruction of the later will by the testator would revive the former will.  There is an irreconcilable conflict of authority upon the question of the effect of the destruction of a second or subsequent will upon an earlier one.  The great weight of authority is to the effect that the execution of a subsequent will, containing an express clause revoking the former will, operates as a revocation at once, and that the former will

thus revoked cannot be subsequently revived, except by republication, and is not renewed by a destruction of the later will. *James* v. *Marvin*, 3 Conn. 576; *Pickens* v. *Davis*, 134 Mass. 252; *Scott* v. *Fink*, 45 Mich. 241, and cases cited. But we think the weight of authority, and also the previous expressions of this court in *Scott* v. *Fink*, favor the doctrine that, as to a will containing no express clause of revocation, it does not have the effect, of its own force, to revoke the former will, and that the destruction of such later will effects a revival of the earlier will. The cases which maintain this doctrine rest upon the ground that all wills are, in their nature, ambulatory until the testator's death, at which time, and not before, the testament becomes operative. *Flintham* v. *Bradford*, 10 Pa. St. 82; *Peck's Appeal*, 50 Conn. 562; *Simmons* v. *Simmons*, 26 Barb. 77; and cases cited *supra*.

We are cited to the statute (section 5793, 2 How. Stat.) which provides:

"No will, nor any part thereof, shall be revoked, unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator or by some person in his presence and by his direction; or by some other will or codicil, in writing, executed as prescribed in this chapter; or by some other writing, signed, attested, and subscribed in the manner provided in this chapter for the execution of a will."

And it is urged, with much show of plausibility, that the execution of a new will operates, under this statute, to revoke the former will. Such, however, is not the strict reading. If, at the common law, a will duly executed is ambulatory, and is held, for the purposes of this question, to take effect only at the death of the testator, we think the statute should be construed as having reference to the common-law rule. The revocation may be by some other will, but it occurs when the will takes effect, not when executed. This statute no more than declares the common law on the subject. The precise

question was involved in *Peck's Appeal, supra.* The statute of Connecticut provides:

"No will or codicil shall be revoked except by burning, canceling, tearing, or obliterating it by the testator, or by some person in his presence by his direction, or by a later will or codicil." · Gen. Stat. 1875, p. 370.

It was said:

"Prior to 1821, as well as since, the law was so that a later will, when it took effect by the death of the testator, revoked a prior inconsistent one. That proposition is not questioned. If *James* v. *Marvin* is an authority, before the statute a subsequent will, containing no revocatory clause, did not, during the lifetime of the testator, revoke a prior will. In respect to that point, we do not think the statute was intended to make any change. * * * The testatrix, by executing the second will, evinced no intention to become intestate, but, rather, a contrary intention. By destroying the last will, and carefully preserving the first, she affords satisfactory evidence that she intended, until the very last, to die testate, and that that should be her will. In the absence of an express provision to that effect, we cannot presume that the legislature intended that the mere execution of a will should, in all cases, revoke a prior will. Such a construction would in many cases defeat the manifest intention of the testator. The statute requires a 'later will or codicil.' We think that means an operative will or codicil."

In *Scott* v. *Fink* it was said:

"There seems to have been a material distinction, and on good ground, between the state of a former will, after a second one merely inconsistent with it, and its state after a second one with a declaration expressly revoking it. In the first case the only chance for the second to operate in revocation of the first, according to the prevalent theories of the courts, was by its coming to a head as an active will, which it could do only by surviving its author. Being the last expression of the decedent, and at the same time practically inconsistent with the prior one, the intent to repeal the first by it was to be implied. In case, however, of its being recalled by the testator in his lifetime, it could not, on the theory referred to, be taken to have had the effect to do away with its predecessor.

Being cut off before having its dispositions of property awakened into life, it could have no affirmative operation, through its dispositions, upon the estate."

And after holding that a will containing a clause of revocation does operate to revoke a former instantaneously, and of its own force, the court concludes by saying:

"Upon consideration, the doctrine of *James* v. *Marvin*, 3 Conn. 576; *Boudinot* v. *Bradford*, 2 Dall. 266; and others holding the same views, and ruling in accordance with what has just been expressed,—appears to be most consonant with our system and with popular understanding, and at the same time the most reasonable and safe."

While it may be said that this language was not absolutely necessary to a determination of the case, yet it is evident that a conclusion was reached and the announcement made after careful deliberation; and we feel that we ought not to disturb the rule laid down, without being convinced of its error upon authority.

2: The burden of proof is upon a party who asserts that the later will contained a clause of revocation. Thornt. Lost Wills, § 115; Beach, Wills, § 73; *Caeman* v. *VanHarke*, 33 Kan. 333. The circuit judge charged the jury:

"It is incumbent upon the party who claims that the second revokes the first will to establish, by a fair preponderance of the evidence, that it contained a clause of revocation. I am not aware that there is any direct evidence in this case that any of the later wills contained any express clause of revocation."

Complaint is made of this, and it is discussed in the brief of counsel as though it related to the subject of the burden of proof to establish the *destruction* of the later will, which it clearly does not. It relates solely to the proof of the contents of the last or destroyed will. It is true that, the later will having been proven, this amounted to a revocation of the former will, if in existence at the time of the testator's death. But if the fact is estab-

lished that the will was kept in his custody, and could not be found after his death, this raised a presumption that the will was destroyed *animo cancellandi.* 1 Redf. Wills, 350. There was no request upon the subject of the burden of proof, and we do not think any error was committed by failing to charge upon this subject any more specifically, in the absence of requests.

3. Testimony was introduced showing that the decedent at one time exhibited to Dr. Lum and his wife a paper which was either a will or a codicil, and the jury, in answer to a special question, found this to have been a codicil to the will admitted to probate. It is contended that there was no evidence that this was a codicil to this will, and the court was asked so to charge. Mrs. Lum testified to an occasion when a transcript of a certain paper was made; that she and her husband were in the room of deceased; that he took out a sheet of foolscap paper, read portions of it, and asked her to sit down and copy off the purport of the paper. He told her that Mr. Vance and Mr. Cheever were the executors of the will, and he said, at the last, that, if there were any changes in the will, he would let her know. She was then asked:

"Do you know the difference between a codicil and a will?"

"*A.* I did not at that time.

"*Q.* Do you know now?

"*A.* You told me. Yes, sir.

"*Q.* After having been told the difference between a codicil and a will, I want to know what he said to you on that subject, if you can recollect anything he said about it.

"*A.* Simply that he had made this slight alteration in his original will. That was all.

"*Q.* That was all there was about that?

"*A.* That was all."

She further testified that the paper which she saw was signed and witnessed. The only will of which Vance and Cheever are executors is the will offered for probate in this case. As before stated, Mrs. Lum made an abstract

of this paper in the presence of decedent, which she retained. It appears that this abstract does not dispose of all the property. We think, under this testimony, that there was some evidence that this was a codicil to the will of 1888.

4. It is claimed that error was committed, when Mrs. Anna North was on the stand, by an offer on the part of proponents' counsel to show that the subsequent will was destroyed by the witness. When this offer was made, counsel for contestants stated that, if proponents' counsel desired to show that the witness destroyed the later will, he would concede it, for the purposes of the case, and go to the jury. It is difficult to conceive how this offer could have damaged the contestants, inasmuch as the court charged the jury, at their request, as follows:

"If you find the will witnessed by Dr. Greenshields and Dr. Parkin was not revoked or destroyed by Merchant H. Goodrich, but has been lost or destroyed by another person, it is still the last will and testament of Mr. Goodrich, and may be probated."

The most that can be said is that it might have had a tendency to create a prejudice against the contestants. But the line of inquiry indulged by counsel was proper for the purpose of showing, if he could, by such cross-examination, a change in the state of the mind of the testator towards Mrs. North, who was one of the beneficiaries in the later will. We do not think error was committed in this regard.

Other questions are presented by the appeal of the contestants, which we have examined, but deem it unnecessary to discuss in this opinion. We think no error was committed to the prejudice of the contestants.

The proponents also appeal from an order of the court awarding $200 costs to the contestants. There are two sections of the statute bearing upon this subject. Section 6791 reads as follows:

"In all cases that shall be contested either in the probate court or in the circuit court, such court may award

costs to either party, in its discretion, to be paid by the other or to be paid out of the estate which is the subject of the controversy, as justice and equity shall require."

Section 8982 provides that—

"Upon appeals from probate courts to a circuit court and from the circuit courts to the Supreme Court, costs shall be paid by the appellant or respondent, as shall be directed by the court to which the appeal is made; and upon affirming any sentence, determination, or decree, or upon the appeal being discontinued or quashed, the court may, in its discretion, award damages for the delay and vexation caused by such appeal."

We think the costs should have been limited to the actual taxable costs, and the judgment will be so modified. The proponents will recover costs of this court.

The other Justices concurred.