## JOHN O. STETSON *et al.*

*v.*

## EZRA SHERMAN STETSON *et al.*

*Opinion filed February 18, 1903.*

1. WILLS—*English statute of Victoria has not been adopted in Illinois.*
The English statute of Victoria, providing that no will or codicil
which has been in any manner revoked shall be revived otherwise
than by a re-execution thereof or by a codicil showing an inten-
tion to revive the same, has not been adopted in Illinois.

2. SAME—*how will may be revoked in Illinois.* Under section 17 of
our Statute of Wills a will may be revoked by the burning, cancel-
ing, tearing or obliterating thereof by the testator, or by some
one in his presence and at his direction, or by a subsequent will
expressly declaring the revocation of such former will; but it can
not be revoked by a subsequent writing not testamentary.

3. SAME—*will is of no legal effect until the testator's death.* The rule
that a testamentary writing is of no legal effect as a will until the
testator's death, applies to the whole instrument, including the
revocation clause, and hence the testamentary paper which the
testator permits to survive him is, *prima facie,* his will.

4. SAME—*when will is presumed to have been destroyed by the testator
animo revocandi.* A will shown to have been taken possession of by
the testator as soon as it was prepared, will be presumed, if not
found after the testator's death, to have been destroyed by him
*animo revocandi.*

5. SAME—*effect of destruction of will revoking uncanceled former will.*
Destruction by the testator of a will of revocation operates to re-
vive the will revoked if the latter is found uncanceled after the
testator's death.

APPEAL from the Circuit Court of Bureau county; the
Hon. W. H. GEST, Judge, presiding.

This is a bill in chancery, filed in the circuit court of
Bureau county by the appellants, John O. Stetson, Anna
Stetson, Emma J. Chandler and David Chandler, against
the appellees, Ezra Sherman Stetson, Merriam Stetson,
Joseph M. Stetson, Hannah Stetson, James B. Stetson,
Sarah Stetson and Ezra Sherman Stetson, executor of
the last will and testament of Jesse Stetson, deceased,

praying that the will of Jesse Stetson, deceased, bearing date December 3, 1897, and admitted to probate June 5, 1899, and the probate thereof, be set aside, and that the estate of the deceased be distributed among his heirs-at-law as intestate estate. The bill was answered by the appellees Ezra Sherman, Joseph M. and James B. Stetson, who were defendants below. Replication was filed to the answer. By agreement jury was waived and the cause was tried by consent before the circuit judge without a jury. Upon hearing had, the trial court dismissed the bill at the cost of the complainants below, appellants here. The present appeal is prosecuted from such decree of dismissal, so entered by the court below.

The allegations in the pleadings, and the proofs, introduced upon the hearing, show substantially the following state of facts:

Jesse Stetson of Neponset township, Bureau county, died on April 27, 1899, leaving no widow, nor children, nor descendants of children, but leaving, him surviving, as his only heirs-at-law, four brothers and one sister, to-wit, the appellant John O. Stetson, a brother, and the appellant Emma J. Chandler, a sister, and the appellees Ezra Sherman Stetson, Joseph M. Stetson, and James B. Stetson, brothers. Jesse Stetson left a will, dated December 3, 1897, and this will was admitted to probate by the county court of Bureau county on June 5, 1899. By the terms of the will the testator, after providing for the payment of his funeral expenses, bequeathed and devised all the residue and remainder of his estate, both real and personal, to his brothers, the appellees Ezra Sherman, Joseph M. and James B. Stetson, share and share alike, and left nothing in said will to appellants, his brother, John O. Stetson, and his sister, Emma J. Chandler.

It is alleged in the bill, and the proof tends to show, that, at some time between September 1, 1898, and the death of the testator on April 27, 1899, he procured an attorney at Kewanee to prepare for him another will,

which is alleged to have been signed by him, and attested in the presence of the said attorney, and said attorney's daughter who acted as a stenographer for him.   What the contents of the will last mentioned were is not clearly shown.   The will last mentioned was not found among the papers of the deceased testator, nor in his possession, and it has never been produced or seen by any person since the death of the testator.   What proof there is in the record as to the execution of the last named will, and as to its contents, is purely oral, and consists mainly of the testimony of the attorney, who states that he drew it, and of his daughter, the stenographer above mentioned. The testimony of the draftsman of the last named will, and of his daughter, tends to show that said last named will contained a clause, revoking all former wills made by the testator, Jesse Stetson.   The bill alleges that, by virtue of the last will alleged to have been executed by the testator between September 1, 1898, and April 27, 1899, and by virtue of the revocatory clause contained therein, the former will of December 3, 1897, admitted to probate on June 5, 1899, was revoked and annulled, and became of no force and effect.   The bill also alleges that the second will, so alleged to have been made by the testator, had not appeared to be in existence since his death, but was lost or otherwise disposed of, and that its whereabouts were unknown to appellants.

The answer, filed below by the appellees, admitted the execution and probate of the will of December 3, 1897, but denied the execution of the second will, and also denied that the testator ever made any other will than that of December 3, 1897.

The original bill charged that the will of December 3, 1897, was executed through the use of undue arts, and fraudulent practices and misrepresentations, and threats by the appellees, Ezra Sherman, Joseph M. and James B. Stetson.   In an amended bill, however, filed by complainants below, they eliminated the charges of undue

influence and fraud, and left, as the sole ground of their contest, the charge that the will of December 3, 1897, had been revoked by the subsequent will, alleged to have been executed as above stated.

The complainants below, appellants here, submitted to the court, to be held as law in the decision of the case, four propositions, all of which were refused; and their refusal is one of the errors relied upon by the appellants. One of these propositions asserted that the court below, the circuit court of Bureau county, had jurisdiction to entertain proof, tending to show the execution and contents of a will, containing a revoking clause and made by Jesse Stetson subsequently to the will dated December 3, 1897, for the purpose of determining the validity or invalidity of the former will of December 3, 1897, although such proof had never been offered in the county court. The other propositions asserted, in substance, that if, after the execution of the will of December 3, 1897, Jesse Stetson made another will, containing a clause expressly revoking all former wills made by him, the loss or destruction of the subsequent will, even if destroyed by the testator himself, would not operate to revive the former will of December 3, 1897; that, upon the execution of the subsequent will, the former will was immediately revoked and annulled, and could only be revived by a re-attestation or re-publication thereof in the manner required by law for the execution of wills; and that if, subsequent to the execution of the will of December 3, 1897, Jesse Stetson made another will, containing a clause expressly revoking all former wills, the clause of revocation therein contained operated at once by its own force to immediately revoke and annul the former will of December 3, 1897, and that, if the subsequent will was traced into the possession of the testator, though not found after his death, and if the former will was in existence and found uncanceled after his death, still, under the evidence, the former will was not revived,

and was of no force or effect, and the probate thereof should be vacated and set aside.

ᵥ CAIRO A. TRIMBLE, and GEORGE S. SKINNER, for appellants:

A subsequent will with a clause of revocation revokes a former will, and the fact that the last will cannot be found will not change the rule. *Moore* v. *Griswold*, 1 Redf. Surr. 388; *In re Griswold*, 15 Abb. Pr. 299.

A will expressly revoking all former wills is valid as a revoking instrument though the contents of the will itself, so far as it disposes of property, are unknown, and cannot be proved because of the loss or destruction of the will. Schouler on Wills, sec. 412; 1 Underhill on Wills, sec. 266; 37 L. R. A. 563.

Where a will has once been revoked by a later will, nothing can be claimed under it, although the later will has been lost or destroyed. *Stevens* v. *Hope*, 52 Mich. 65.

A later will, properly executed and containing a clause revoking former wills, is effectual as a revocation, although, having been lost or destroyed, its contents, other than the revocatory clause, cannot be proved, and it can · not be probated as a will. *In re Cunningham*, 38 Minn. 169.

An express clause of revocation is a positive act of the party, which operates by its own proper force, without being at all dependent on the consummation of the will in which it is found. Such express clause of revocation is not testamentary in its character, but is an act consummated by the execution of the deed or will in which it is contained, and operates instantaneously and *per se*, and absolutely and immediately annuls all precedent devises. *James* v. *Marvin*, 3 Conn. 577; *Cheever* v. *North*, 106 Mich. 390; *Colvin* v. *Warford*, 20 Md. 391; *Hawes* v. *Nicholas*, 73 Tex. 481; *Boudinot* v. *Bradford*, 2 Dall. 266; Powell on Devises, 549; *Pickens* v. *Davis*, 134 Mass. 252; *Burns* v. *Travis*, 117 Ind. 44; *Barksdale* v. *Hopkins*, 23 Ga. 332; *Nelson* v. *McGiffert*, 3 Barb. Ch. 158; *Cutto* v. *Gilbert*,

9 Moore's Privy Council Cas. 131; *Helyer* v. *Helyer*, L. R. 9 Prob. Priv. 237.

If a second will revokes the first, it is immaterial what becomes of the second will, and it is not necessary that its absence should be accounted for; nor is it necessary to prove that the second will was in existence at testator's death. *Hawes* v. *Nicholas*, 73 Tex. 481; *James* v. *Murphy*, 8 W. & S. 275; *Wallis* v. *Wallis*, 114 Mass. 510; *Stevens* v. *Hope*, 52 Mich. 65; *Scroggins* v. *Turner*, 98 N. C. 135; *In re Cunningham*, 38 Minn. 169.

WATTS A. JOHNSON, and C. C. WILSON, for appellees:

If a will is traced to the testator's possession and be not forthcoming at the time of his death, the presumption is that he destroyed it *animo revocandi*, and such presumption will require strong proof to rebut it.    1 Jarman on Wills, 290; *Taylor* v. *Pegram*, 151 Ill. 106.

The mere absence of a will raises the presumption that it is revoked.    Whether this presumption is one of law or of fact is immaterial, as in either case it must be rebutted· by strong proof. *Johnson's Will*, 40 Conn. 587.

A will revoked by a subsequent will, but not canceled, is re-established by the destruction *animo revocandi* of the subsequent will.    *Goodright* v. *Glazier*, 4 Burr. 2512; *Harwood* v. *Goodright*, Cowp. 92; 1 Jarman on Wills, 136; 29 Am. & Eng. Ency. of Law, p. 288, sec. 7, and notes; *Taylor* v. *Taylor*, 2 Nott & McC. 482; *Randall* v. *Beatty*, 31 N. J. Eq. 643; *Peck's Appeal*, 50 Conn. 562; *Rudisill* v. *Rodes*, 29 Gratt. 149; *Lawson* v. *Morrison*, 2 Dall. 286; *Boudinot* v. *Bradford*, 2 id. 267; *Colvin* v. *Warford*, 20 Md. 357; *Flintham* v. *Bradford*, 10 Pa. St. 85; *Marsh* v. *Marsh*, 3 Jones' L. 77.

All wills are ambulatory and have no operation until the testator's death, and the destruction *animo revocandi* by the testator of a second will necessarily leaves the· first to go into operation at his death. Nor does the fact that the second contained a clause of revocation alter the case, because that clause is just as inactive as the

rest of the will, and so continues up to the time the whole is canceled. *Taylor* v. *Taylor*, 2 Nott & McC. 482; 1 Jarman on Wills, 136; 1 Underhill on Wills, sec. 269; *Goodright* v. *Glazier*, 4 Burr. 2512; *Peck's Appeal*, 47 Am. Rep. 686.

The revocation of a revoking will, *prima facie*, is evidence that the testator intended to revive the former uncanceled will. *Harwood* v. *Goodright*, Cowp. 92; *Colvin* v. *Warford*, 20 Md. 357; 4 Kent's Com. 516; 1 Underhill on Wills, sec. 269.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

In the case at bar, Jesse Stetson died testate on April 27, 1899, leaving a will, dated December 3, 1897, and executed by him on that day in accordance with the statute in such cases made and provided. This will was found after his death uncanceled and among his papers in the Citizens' National Bank of Princeton in Bureau county, with which bank the deceased was in the habit of doing business in his lifetime. The will, when found in the bank, was in an envelope, which was sealed. After the death of the testator it was taken by the president of the bank to the judge of the county court, where the envelope was opened, and the will was filed. It was duly admitted to probate on June 5, 1899; and the present bill in chancery to set aside the probate thereof was filed May 2, 1901, about a month before the expiration of the two years, allowed by the statute for filing a bill in chancery to contest the validity of the same.

The sole ground, upon which the validity of the will of December 3, 1897, duly admitted to probate, is contested, is that a subsequent will was executed by the testator, containing a clause revoking all former wills. Such subsequent will, alleged to have been executed between September 1, 1898, and the death of the testator, has been lost or destroyed; or, at any rate, it was not found in the possession of the testator, and has never

been produced, either for probate in the county court, or otherwise.

The question, presented for our consideration, and raised by the refusal of the court below to hold as law the propositions submitted by the appellants, and by the rulings of the court below in the admission and exclusion of evidence, is two-fold in its character, and, as formulated in the briefs of counsel on both sides, may be thus stated: If the second will, made by Jesse Stetson, contained an express clause of revocation, did such clause operate at once and of its own force to immediately revoke and annul the first will, made on December 3, 1897; and did the loss or destruction of the second will, containing such clause of revocation, even though such loss or destruction was the act of the testator himself, operate to revive the former will dated December 3, 1897?

Perhaps, in no branch of the law is there more conflict among the decisions of the courts than in that, which relates to the revocation of a former will by a subsequent will, and to the effect of the cancellation of a subsequent revoking will in reference to the revival or non-revival thereby of the first will.

There are cases, which hold, and many of the text books endorse and sustain the holdings of such cases, that, where a person, having made a will, afterwards makes another will, containing a clause expressly revoking all former wills, and afterwards destroys the second will, and dies, leaving the former will uncanceled, the revoking clause operates instantaneously to effect a revocation, and that, consequently, the destruction of the second will does not revive the former one. (1 Underhill on Wills, sec. 266; Schouler on Wills, secs. 412-418; *James* v. *Marvin*, 3 Conn. 577; *Scott* v. *Fink*, 45 Mich. 241; *Cheever* v. *North*, 106 id. 390; *Hawes* v. *Nicholas*, 72 Tex. 481; *Pickens* v. *Davis*, 134 Mass. 252; *Barksdale* v. *Hopkins*, 23 Ga. 332). Many of the cases, which thus hold that the loss or destruction by the testator himself of a subsequent will,

containing a revoking clause, does not revive a former will, though found in the possession of the testator uncanceled at his death, are based upon statutes dissimilar to the Illinois statute upon this subject, and upon considerations which have no force or application in this State, and under our decisions.

In England, what is known as the Statute of Victoria, passed in 1837, provided, (chap. 26, sec. 22), that "no will or codicil or any part thereof, which shall be in any manner revoked, shall be revived otherwise than by the re-execution thereof, or by a codicil executed in manner hereinbefore required, and showing an intention to revive the same," etc. (29 Am. & Eng. Ency. of Law, p. 289, note 2). Some thirteen of the American States have adopted either the Statute of Victoria, or a similar statute, upon this subject. But no such statute was ever passed or adopted in this State.

In some of the cases a distinction is drawn between a subsequent will, whose provisions are inconsistent with the former will, thereby operating to effect a revocation by implication, and a subsequent will, which contains a clause expressly revoking all former wills. This distinction, however, is done away with under the terms of the Illinois statute. Section 17 of the Illinois Statute of Wills provides as follows: "No will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law." (3 Starr & Curt. Ann. Stat.—2d ed.—pp. 4044, 4045). By the terms of this statute, the subsequent will, which shall have the effect of revoking a former will, must

be a will "declaring the same;" that is to say, must be a will which, upon its face and by its terms, declares a revocation. If the will must expressly contain a clause revoking all former wills, the question as to any inconsistency between the provisions of the later will and the former will is immaterial.

Again, many of the cases are based upon statutes, which authorize the revocation of a will to be made by a subsequent writing, which is not necessarily a will, or testamentary in its character. A large part of the American legislation upon this subject has its basis in the English Statute of Frauds, by one of the provisions of which, "no devise in writing of lands, tenements or hereditaments, nor any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or *other writing* declaring the same," etc. (1 Underhill on Wills, sec. 247). It will be noticed that, by the terms of this statute, a devise in writing of lands, etc., may be revoked, not only by some other will or codicil in writing, but by some "other writing declaring the same." In other words, the writing, declaring the revocation, may be some other writing than a will or codicil. Where the instrument of revocation is not necessarily, by the terms of the statute, a will, it may have the effect of operating instantaneously, so as to effect a revocation before the death of the testator; and if the instrument of revocation may be in writing, it will make no difference that its terms are embodied in a will rather than in some other writing, which is not a will.

For example, one of the cases, relied upon by counsel for appellants to support their contention upon this subject, is the case of *In re Cunningham*, 38 Minn. 169, where the court say: "The testator might effectually revoke his former will by a writing so declaring, and executed as this instrument was executed, (Gen. Stat. 1878, chap. 47, sec. 9,) as he might also by other means." By reference to section 9 of chapter 47 of the General Statutes

of Minnesota of 1878, it is found that a will may be re-
voked "by some will, codicil or *other writing* signed, at-
tested and subscribed in the manner provided for the
execution of a will." By section 17, however, of the Illi-
nois Statute of Wills, the revocation must be by a will
declaring such revocation, and not by some other writ-
ing than a will, which may not be testamentary in its
character.

So, also, in *Cheever* v. *North*, 106 Mich. 393, it appears
that, by the terms of the Michigan statute, a former will
may be revoked not only by a subsequent will, but "by
some *other writing* signed, attested and subscribed in the
manner provided in this chapter for the execution of a
will." The case of *Scott* v. *Fink*, 45 Mich. 241, is based
largely upon the case of *James* v. *Marvin*, 3 Conn. 576; but
the latter case of *James* v. *Marvin* has been materially
weakened, if not actually overruled, by the subsequent
case of *Peck's Appeal from Probate*, 50 Conn. 562. In *Peck's
Appeal from Probate, supra,* the criticism of *James* v. *Mar-
vin, supra,* made by Redfield in his work on Wills, is re-
ferred to and quoted; and, there, the Supreme Court of
Connecticut say: "The weight of authority seems to be
in harmony with the views expressed by Mr. Redfield.
* * * The testatrix by executing the second will evinced
no intention to become intestate, but rather a contrary
intention. By destroying the last will and carefully pre-
serving the first she affords satisfactory evidence that
she intended until the very last to die testate, and that
that should be her will. In the absence of an express
provision to that effect we cannot presume that the leg-
islature intended that the mere execution of a will should
in all cases revoke a prior will. Such a construction
would in many cases defeat the manifest intention of the
testator. The statute requires a 'later will or codicil.'
We think that means an operative will or codicil. * * *
We would say, however, that we have carefully exam-
ined the cases cited by the counsel for the appellees,

and find that many of them are cases in which the later wills became operative as wills; and of course the language of the courts must be interpreted with reference to that circumstance, and cannot properly be applied to a case like this."

So, also, in the case of *Barksdale* v. *Hopkins*, 23 Ga. 340, it appears that under the statute of Georgia a will may be revoked "by some other will or codicil in writing, or *other writing* of the devisor signed in the presence of three or four witnesses declaring the same." Under the Georgia statute, not only may the revocation be by an instrument not testamentary in its character, but Georgia is one of the States which has adopted the Victoria statute, or a statute similar to the Victoria statute above quoted. In Virginia, also, section 22 of the Statute of Victoria, 1837, is in force. (*Rudisill's Exr.* v. *Rodes*, 29 Gratt. 148). In Texas, also, where the doctrine seems to prevail that the destruction of a duly executed will, containing an express revocation of a former will, does not have the effect of reviving the former will, the statute provides that a will may be revoked "by subsequent will, codicil or *declaration in writing* executed with like formalities," etc. (*Hawes* v. *Nicholas*, 72 Tex. 483).

It being established then that, under section 17 of the Illinois Statute of Wills, a former will can only be revoked by a subsequent will declaring the revocation of all former wills, and not by a subsequent instrument in writing not testamentary in character which declares the revocation of the former will, it cannot be said that, in this State, the destruction of a duly executed will, containing an express revocation of a former will, does not have the effect of reviving the former will.

We have held that "a will takes effect at the death of the testator." (*Scofield* v. *Olcott*, 120 Ill. 362). Indeed, the general doctrine is, that a will is ambulatory, and has no effect until the death of the testator. It follows, that a testamentary paper, which the testator permits to sur-

vive him, must be his will.   A will is inoperative and
ineffectual, and has no legal existence, until it is consum-
mated by death.  (*Taylor* v. *Taylor*, 2 N. & M. (S. C.) 483).

In *Marsh* v. *Marsh*, 3 Jones' L. (48 N. C. 78,) it is well
said:  "As wills are ambulatory and have no operation
until the death of the testator, it is difficult to see how
the execution of a second will, which is afterwards de-
stroyed by the testator, can in anywise affect the valid-
ity of the will previously executed.   Both are inactive
during the life of the testator, and the cancellation of the
second, it would seem, must necessarily leave the first to
go into operation at the testator's death.   Nor is it per-
ceived how the fact, that the second contained a clause
of revocation, can alter the case; because that clause is
just as inactive and inoperative as the rest of it, and so
continues up to the time that the whole is canceled.  This
principle is settled in the common law courts in England,
in regard to devises."   In *Taylor* v. *Pegram*, 151 Ill. 106,
we said:   "As a general rule, if a will is traced into the
testator's possession, and, at his death, cannot be found,
the presumption is, (in the absence of circumstances
tending to show a contrary conclusion,) that he destroyed
it *animo revocandi.*"   "Where a testator has a will in his
own custody, and that will cannot be found after his
death, the presumption is that he has destroyed it him-
self—it cannot be presumed that the destruction has
taken place by any other person without his knowledge
or authority, for that would be presuming a crime." (*Rick-
ards* v. *Mumford*, 2 Ph. 24; 29 Am. & Eng. Ency. of Law,
p. 292, note 3).   (See also *Boyle* v. *Boyle*, 158 Ill. 228).   In
*Boyle* v. *Boyle*, *supra*, it was held that a will will be pre-
sumed to have been destroyed by the testator himself,
or at his direction, where he took it from the custodian,
with whom it had been for several months, and carried
it away, and it could not be found after his death.

In the case at bar, the will, which is said to have been
executed by Jesse Stetson between September 1, 1898,

and his death on April 27, 1899, is shown by the testimony of the appellants to have been taken possession of by him as soon as it was executed, and to have been carried away by him from the office of the attorney, who is said to have drawn it; nor could it be found among his papers or elsewhere after his death. It is to be presumed, therefore, that Jesse Stetson destroyed this will *animo revocandi.* If he destroyed it with the intention of canceling or revoking it, it was canceled or revoked as an entirety; so long as Jesse Stetson was alive, this second will was merely ambulatory, and had no operation, and could have no operation until his death. While it was thus ambulatory, and before his death, the presumption is that he destroyed it, and if he destroyed it, the clause contained in it, which revoked all former wills, was canceled and revoked, as well as the balance of the will. It necessarily results that the former will of December 3, 1897, was revived when the subsequent will, containing the revoking clause, was canceled or destroyed. Upon this subject Redfield in his work on Wills (1 Redfield on the Law of Wills, marg. p. 328,) says: "It has been held in some of the American courts, that a subsequent will containing a clause of revocation, executed with due solemnity for the purpose of revoking an existing will, operates, *proprio vigore,* and instantaneously, as a revocation, and consequently, that the destruction of the second will did not revive the former one. This doctrine has an air of plausibility, from the fact that an instrument of revocation alone would unquestionably have this effect, so long as it was allowed to remain operative. But that would show a present purpose of becoming intestate, carried into effect as far as practicable before death. But the making of a will, with a revocatory clause, is very different. It is but substituting one will for another. And the revocatory clause is made dependent, in some sense, upon the subsequent will going into operation. And there is, ordinarily, no purpose of hav-

ing the revocatory clause operate, except upon that condition. The whole instrument is, therefore, ambulatory, and when destroyed it all ceases to have any operation. And the same is true of the destruction of a will merely revocatory of former wills. By such destruction, the former wills, if in existence, become revived." (*Peck's Appeal from Probate*, 50 Conn. 566).

In *Flintham* v. *Bradford*, 10 Pa. St. 90, the Supreme Court of Pennsylvania say: "All wills are in their nature inchoate and ambulatory until testator's death, at which time, and not before, the testament becomes operative and complete. The will of 1824 was an inchoate intention, mutable and inconstant, and, by the willful and deliberate act of cancellation on the part of the testator, it became as if it never had been. The prior will of 1821, being preserved by the testator entire, and without intentional or apparent blemish, became the will for the time being, which would be consummated at the testator's death, unless before that time he manifested a change of intention, according to the rules of law." So, in the case at bar, the second will, alleged to have been made by Jesse Stetson, was inchoate and ambulatory until his death; and, as he is presumed to have destroyed it for the reasons already stated, "it became as if it never had been." The prior will of December 3, 1897, having been preserved by him entire and without intentional or apparent blemish, has become his will.

At common law, where the later of two inconsistent wills was revoked by the testator in his lifetime, the earlier will became thereby revived, "and, unless afterwards revoked by some subsequent act, came into operation on his decease, whether the later will contained an express clause of revocation or not." (29 Am. & Eng. Ency. of Law, p. 288). In *Harwood* v. *Goodright*, Cowp. 92, Lord Mansfield said: "If a testator makes one will and does not destroy it, though he makes another at any time virtually or expressly revoking the former, if he after-

wards destroy the revocation, the first will is still in force
and good." (29 Am. & Eng. Ency. of Law, p. 289, note 3).

In *Goodright* v. *Glazier*, 4 Burr. 2513, Lord Mansfield
said: "Here, the intention of the testator is plain and
clear. A will is ambulatory till the death of the testator.
If the testator lets it stand till he dies, it is his will; if
he does not suffer it to do so, it is not his will. Here, he
had two. He has canceled the second; it has no effect,
no operation; it is as no will at all, being canceled be-
fore his death. But the former, which was never can-
celed, stands as his will." In the same case Mr. Justice
Yates concurred with Lord Mansfield and said: "A will
has no operation till the death of the testator. This
second will never operated; it was only intentional. The
testator changed his intention; and canceled it. If by
making the second the testator intended to revoke the
former, yet that revocation was itself revocable; and he
has revoked it."

In Schouler on Wills (3d ed. sec. 413) it is said: "The
English common law tribunals laid down a rule, under
Lord Mansfield's lead, which has been thought more in-
flexible than that favored by ecclesiastical courts, viz.,
to the effect, that, if a testator keeps his first will unde-
stroyed and uncanceled, makes a second will virtually
or expressly revoking it, and then destroys or cancels
the second will only, thus repealing his revocation, the
first will thereupon revives and continues in force." "In
the ecclesiastical courts it was held that the revocation
of the later will raised no presumption in favor of the re-
vival of the earlier will, but that the question depended
upon the intention of the testator, as shown by the pecu-
liar facts and circumstances of the case, and was open
to decision either way." (29 Am. & Eng. Ency. of Law,
pp. 288, 289).

But "by the common law the first will is presumed
to be restored to its active energy by the canceling of
the second." (*Taylor* v. *Taylor*, *supra*). The common law

rule best harmonizes with the course of legislation and judicial decisions in this State, for the reason that the common law of England, so far as the same is applicable and of a general nature, is considered as of full force in this State where it is not repealed by legislative authority. (Hurd's Stat. 1899, p. 399). The rule above stated, as adopted by the ecclesiastical courts, is derived from the civil, and not the common law. (*Taylor* v. *Taylor*, *supra*). In *Randall* v. *Beatty*, 31 N. J. Eq. 643, where a testatrix executed several wills, all of which she destroyed, except one executed in 1870, and where by a will made in 1873 she expressly revoked all former wills, but afterwards canceled the will of 1873, and where after her death the will of 1870 was found carefully preserved among her effects, it was held that the cancellation of the will of 1873 revived that of 1870, the court saying: "The rule on the subject of the revival of a prior will by the revocation of a later one containing words of revocation, was, up to 1838 (when by the enactment of a statute—1 Vict. chap. 26—the question was put at rest,) different in the courts of common law and the ecclesiastical courts in England, the former holding that the revocation of the later will, of itself, worked a revival (Jarman on Wills, 122, 123), while the latter held that, whether there was a revival or not, was a question of intention. (*Usticke* v. *Bawden*, 2 Addams, 116). The will of 1870 was never canceled. * * * The will of 1870 was, at her death, found among her effects in an envelope, with a copy of her deceased husband's will. It was entirely in her own handwriting. The law declares the manner in which a will is to be revoked. It must be by burning, canceling, tearing or obliterating it by the testator, or in his presence and by his direction and consent, or by a writing executed with the same formalities as a will. No proof of declarations of revocation, made by the testator, will avail. * * * The will of 1870 is produced uncanceled. It is admitted that there is no revocatory will or writing ex-

tant, but it is alleged that all such instruments subse-
quently made by the testatrix, have been canceled. The
execution of the will of 1873 was not attended or followed
by the cancellation of the will of 1870. Notwithstanding
the revocatory clause in the will of 1873, the will of 1870
was retained by the testatrix uncanceled up to the day
of her death. The fact, that she so kept the will, is the
most cogent evidence of her intention that it should be
revived by the cancellation of the will of 1873.   *   *   *
The true rule on the subject is, that, where one will is
revoked by another, the revocation is testamentary, and
the revocation of the latter will revives the former."

In *Lawson* v. *Morrison*, 2 Dal. 289, it was said: "It has
been often determined that a will revoked by a subse-
quent will, but not canceled, was re-established by the
cancellation of the subsequent will."

Our conclusion is that, inasmuch as the later will ex-
ecuted by the testator, Jesse Stetson, must be presumed
to have been destroyed by him in his lifetime, this loss
or destruction has operated as a revival of the former
will of December 3, 1897, although the later will con-
tained a revocatory clause. For this reason the court
below committed no error in dismissing the bill of the
complainants.

Some other points are made by the appellees. One
is that a court of chancery has no jurisdiction to admit a
will to probate or establish it. Certainly, if this could
be considered a proceeding to establish or admit to pro-
bate the second will, alleged to have been made by Jesse
Stetson, a court of chancery would have no jurisdiction
in the matter. In *Wild* v. *Sweeney*, 84 Ill. 213, this court
held that a court of chancery has no jurisdiction to ad-
mit a will to probate, that being conferred upon the
county court. It is furthermore claimed on the part of
the appellees that, if the appellants were justified in set-
ting up the second will as a revocation of the first, they
should have attempted to do so when the will of Decem-

ber 3, 1897, was offered for probate, the appellants having had notice of the application to probate the former will in accordance with the provisions of section 21 of the Statute of Wills, adopted in 1897. (Hurd's Stat. 1899, p. 1750). We deem it unnecessary, however, to discuss the question of jurisdiction, or the question whether the appellants here are estopped from their present contention by reason of their failure to set up the revocation when the original will was offered for probate in the county court. If the evidence establishes all that the appellants claim in regard to the existence of the second will and its contents, its presumed loss or destruction operated to revive the will of December 3, 1897, and, therefore, the consideration of the other questions is unnecessary and immaterial.

The decree of the circuit court is affirmed.

*Decree affirmed.*