In the matter of the probate of the last will and testament of
DANIEL MOORE, deceased.

[Argued October 22d, 1906.   Decided January 15th, 1907.]

The transcript of the proceedings in the orphans court shows that the
will offered for probate had been revoked by ·a subsequent will having
variant provisions, and also containing an express revocation of former
wills, and that the subsequent will had been burned by the testator with
intent to revoke it.—*Held,* upon authority of the decision in this court in
*Randall* v. *Beatty, 31 N. J. Eq. (4 Stew.) 643,* that the revocation of the
subsequent will did not revive the former will, in the absence of circum-
stances indicating that such was the intent of testator.  *Held further,*
that the circumstances proven raised no inference that testator intended
to revive the former will, but such intent was negatived by the proofs,
and therefore that the will offered for probate was properly rejected.

On appeal from Hudson county orphans court.

*Mr. Robert S. Hudspeth* and *Mr. Edward Kenney,* for the
appellant.

*Mr. Michael T. Barrett* and *Mr. Francis Child,* for the re-
spondents.

MAGIE, ORDINARY.

The appeal in this case is from a decree of the orphans court
of Hudson county, refusing to admit to probate a paper writing
propounded as the last will and testament of Daniel Moore, who
died in that county on November 9th, 1903.

The paper writing offered for probate purports to be dated
December 12th, 1882.  If it was executed by Daniel Moore, the
case shows by uncontradicted evidence that, subsequent to that
date, he executed several wills.  The last one was executed be-
tween October 9th and November 14th, 1900.  It.was drawn by
Michael T. Barrett, at the request of Daniel Moore, and was
executed in the manner required by our statute.  This will being
of later date than the paper offered for probate, and disclosing a

scheme for the disposition of his property variant from that appearing in this paper, operated as an indirect revocation of the former will. It is also made to appear that it contained an express revocation of all former wills.

By the second section of the "Act concerning wills," passed November 16th, 1795 (*Pat. L. 189*), it was provided that no devise or bequest in writing shall be revocable otherwise than by some other will or codicil in writing or other writing declaring the same, or by burning, canceling, tearing or obliterating the same by the testator himself, or in his presence, or by his direction or consent. It was further therein provided that all devises and bequests shall remain and continue in force until burnt, canceled, torn or obliterated, or unless the same shall be revoked or altered by some other will or codicil in writing, or other writing of the devisor, signed in the presence of three or more subscribing witnesses, declaring such revocation or alteration.

The legislation was re-enacted in the revision of 1846. *Stat. p. 363; Rev. p. 1243.* By a supplement to the revised act, approved March 12th, 1851 (*3 Gen. Stat. p. 3760*), it was provided that a will could be effectively executed before two witnesses. In consequence, it was further provided that written revocations of wills should be executed in the same manner as wills are required to be executed, and "when so made shall be sufficient to revoke any last will or any part thereof."

If this legislation were now to be reviewed for the first time, I should be inclined to the view that its language in respect to the revocation of a former will by the execution of a later will was adopted to express the indirect or implied revocation thus resulting, and that its language, in respect to revocation by the execution of another writing declaring the revocation, was adopted to express the direct or express revocation thus resulting. This distinction between express and implied revocation was pointed out by Henry W. Green, ordinary, in delivering the opinion of this court in *Smith* v. *McChesney, 15 N. J. Eq.* (*2 McCart.*) *359,* and by the same learned judge when chief-justice, in *Snowhill* v. *Snowhill, 23 N. J. Law* (*3 Zab.*) *447.*

Upon this construction of the statute it might be well maintained that the execution of a later will, impliedly revoking a

former will and containing a clause expressly revoking all former wills, would satisfy both of these clauses of the statute. It is true that the statute declares that the express revocation is to be by "other" writing, which may mean a writing which is not a will. But if that meaning is attributed to the words, I think, but for a construction given them in a case in this court presently to be mentioned, the words of revocation, though contained in a will, might be held to satisfy the statute as "other writing," because such a clause has no testamentary character, and is not a testamentary disposition intended to take effect only at the death of the testator leaving the will unrevoked, but to operate and take effect at once.

In other states this view of an express revocatory clause contained in a subsequent will has been declared by courts of high repute. *Pickens* v. *Davis, 134 Mass. 256; James* v. *Marvin, 3 Conn. 576; Scott* v. *Fink, 45 Mich. 246.* Like views have been expressed in the courts of states having provisions for the revocations of wills similar to those in our legislation. *In re Cunningham, 38 Minn. 169; Cheever* v. *North, 106 Mich. 393.*

The case in this court in which a different view was expressed was decided by Runyon, ordinary, and was *Randall* v. *Beatty, 31 N. J. Eq. (4 Stew.) 643.* It appeared that the decedent, whose testamentary disposition was in question, died leaving a will, executed in 1870. In 1873 she executed another will containing a revocatory clause. The will of 1873 was afterward canceled and decedent retained the will of 1870 in her possession. The learned ordinary held that the will of 1873 did not revoke that of 1870, because the revocatory clause was testamentary in character, and its cancellation revived the former will retained by her.

In the case under consideration the evidence makes it clear that Daniel Moore burned and destroyed the will drawn for him by Mr. Barrett, with intent to revoke it. It was urged in the argument in the court below, and the same argument has been made here, that by the burning and revocation of the later will, the former paper writing, if the will of the deceased, was thereby, *ipso facto,* revived, without considering whether or not the testator, by such revocation, intended to revive the previous will.

For the respondents the contention is, *first,* that the construction of the revocatory clauses of the wills statute was erroneous, but *second,* that if it was not erroneous or is binding upon this court, in the present case, the circumstances proved clearly indicate that Daniel Moore did not, in fact, intend to revive or re-establish any former will. In *Randall* v. *Beatty, ubi supra,* Chancellor Runyon admits that it must appear, in order that the revocation of a later will shall operate to revive a former will, from the circumstances surrounding the transaction, that the testator intended to revive the former will.

Assuming then that such construction of the statute of wills is correct, it admits of no doubt, in my judgment, that Daniel Moore in this case, if he did execute the paper writing in question, did not intend that it should be revived by the destruction of the will drawn by Mr. Barrett and executed by Mr. Moore in 1900.

The will construed in *Randall* v. *Beatty* had been retained by the testatrix, kept with her husband's will in the place of deposit for her valuable papers, and was found there at her death, and this circumstance was seized upon to indicate that when she destroyed a will of later execution she intended to revive the will which she had preserved so carefully.

In the case now under consideration the paper writing claimed to be the will of Daniel Moore was not retained by him in the place in which he kept his important papers, and to which he frequently resorted for examination of them. On the contrary, if the singular story of the discovery of this paper writing is credible, he had practically thrown the paper away, or delivered it, without explaining its contents, along with old letters and papers, to a young woman who passed as his daughter, on the eve of her marriage, which was shortly after the execution of the Barrett will. The paper had been partially burned, and by such burning one of the clauses devising valuable property is rendered incapable of being read. It is a fair conjecture, however, that it is intended to be a provision for his wife Hannah, who was living at the date of this paper writing. It is incredible that, at the time of the destruction of the later will, he could

have an intent to revive that clause, for his wife had been dead for some years and he had married again.

Upon the whole evidence I find no ground upon which an intent to revive can be inferred, but, on the contrary, I think it clear that he did not intend to revive this paper writing, if it ever was his will.

The decree must, therefore, be affirmed on this ground.

The very extraordinary account given of the discovery of this paper writing, and the extraordinary discrepancies appearing in it, might, perhaps, justify a denial of its admission to probate on the ground that the right of heirs-at-law will not be taken away except upon clear proof of a testamentary disposition of the decedent's property. But as the other ground is found to justify the affirmance of the decree below, no opinion will be expressed on this subject.

Let the decree be affirmed. Counsel may be heard before the decree is signed, if they desire, on the question of the allowance of costs and the expenses of the appeal.